JOE C. MEDLEY, PLAINTIFF v. NORTH CAROLINA DEPARTMENT OF CORRECTION, DEFENDANT

No. 8910IC1136

(Filed 3 July 1990)

State § 8.3 (NCI3d)— medical care for inmates—doctor as independent contractor—doctor as agent of State—liability under Tort Claims Act

A doctor who contracted to provide medical services for prison inmates was an independent contractor and not an employee of the State within the meaning of the State Tort Claims Act. However, the doctor was an agent of the State for whose negligent treatment of inmates the State would be liable under the Tort Claims Act. Furthermore, the State

is constitutionally required to provide medical care for its inmates, and it cannot be relieved of this duty by contracting out medical care.

**Am Jur 2d, Penal and Correctional Institutions § 201.**

APPEAL by plaintiff from Decision and Order entered 25 August 1989 by the North Carolina Industrial Commission. Heard in the Court of Appeals 2 May 1990.

*North Carolina Prisoner Legal Services, Inc., by Richard E. Giroux and Norma Ware, for plaintiff-appellant.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Kim L. Cramer, for defendant-appellee.*

ORR, Judge.

This action began as a claim brought by plaintiff, an inmate at Odom Correctional Center, against the Department of Correction (the Department) and several of its employees. Defendant alleged that the Department was liable for the negligence of its employees Dr. John H. Stanley, Dennis Lassiter, and Marsha W. Lilly, who proximately caused his injuries.

Plaintiff was placed in the custody of the Department on 14 June 1978, and at that time plaintiff was suffering from diabetes. Several years later, plaintiff developed an infection under a toenail. On 3 April 1984, he was seen by Dr. Stanley who diagnosed plaintiff as having an infection due to an ingrown toenail. When minor treatment failed to remedy the problem, plaintiff was admitted to Central Prison Hospital. Thereafter, on 16 April 1984, a limited amputation of the toe was performed. When plaintiff's condition failed to improve, an above-knee amputation was performed on his leg on 14 May 1984.

On 3 April 1987, plaintiff filed this claim with the Industrial Commission (the Commission). On 18 May 1987, defendant filed an answer which included motions to dismiss the claim as to Dr. Stanley pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(1), (2) and (6) on the grounds that he is an independent contractor and not an officer, employee, involuntary servant or agent of the State who would be covered by the Tort Claims Act.

After the Commission heard defendant's motions to dismiss Dr. Stanley, on 25 January 1989 Deputy Commissioner Winston L. Page, Jr., filed an order dismissing plaintiff's claim against Dr. Stanley pursuant to an order of summary judgment. The Full Commission affirmed and adopted the decision of the deputy commissioner on 25 August 1989. From that decision, plaintiff now appeals.

In his brief, plaintiff essentially argues that the Commission erred in determining that Dr. Stanley is not an employee or agent of the State whose wrongful conduct would subject the State to a cause of action under the North Carolina Tort Claims Act. Plaintiff first contends that Dr. Stanley is indeed an employee as that term is defined by the common law of this state. In the alternative, plaintiff argues that the Department has a non-delegable duty to provide adequate medical care to its inmates; therefore, the State cannot shield itself from liability due to negligence which results when the work is contracted out to other persons. Plaintiff also argues that Dr. Stanley is an actual or apparent agent of the State for whose negligence the State is liable.

The State argues, on the other hand, that the Commission's decision was correct because the evidence shows that Dr. Stanley is an independent contractor for whose conduct it is not responsible. Furthermore, the State argues that there is no justifiable basis for imposing liability under theories of apparent authority or non-delegable duty.

Because plaintiff is appealing the Commission's entry of a summary judgment order, instead of addressing the questions which we are usually limited to pursuant to N.C. Gen. Stat. § 143-293, we must determine whether the pleadings, interrogatory answers, affidavits or other materials contained a genuine question of material fact, and whether at least one party was entitled to a judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (1983).

The relevant and unchallenged evidence contained in the record consists of answers to interrogatory questions posed to the Department by plaintiff, an affidavit given by the Director of Health and Services for the Department, and a copy of Dr. Stanley's contract for professional services with the Department. These materials tend to show that Dr. Stanley worked as a physician who provided medical care to prison inmates pursuant to a contract which he executed with the Department of Correction. Dr. Stanley worked 10 to 12 hours per week at Odom Correctional Center. He had

the responsibility for referring prisoners to other facilities as it became necessary. When such determinations were made, nurses employed by the Department would arrange for the transfer. The doctor exercised his own medical judgment in accordance with the standards of his profession, although his medical records along with all of the records at the prison units were reviewed once a year by a medical audit team. The final decisions on the renewal of his contract were made by the Secretary of the Department of Correction's Office.

Dr. Stanley and other medical services providers are under contracts which state that either party can terminate the contract upon 30 days notice. These providers do not receive any of the benefits provided to state employees nor are they covered by the Personnel Act. These providers are under the administrative authority of the unit superintendent; however, the superintendent has no authority over their medical judgment and clinical decisions. These medical services providers are subject to the regulatory control of the North Carolina Board of Medical Examiners, the North Carolina Medical Association and other regulatory boards. None of these providers are subject to directions or regulations from correctional personnel who provide medical services, nor do they perform any custodial or supervisory duties for the unit.

Dr. Stanley's contract specifically states that he was hired to "[a]dminister medical services to the inmate population . . . twice weekly and in emergency situations at any time as they apply in the realm of a general practitioner of medicine." His employment was intended to run for five years from the contract date unless either party exercised its right to terminate upon 30 days notice.

In the instant case, both plaintiff and defendant rely on certain factors applied by the Supreme Court in considering whether a person is an independent contractor or an employee. In *Hayes v. Elon College*, 224 N.C. 11, 29 S.E.2d 137 (1944), the Court said you must consider whether the person employed:

> (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing work rather than another;

(e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.

*Id.* at 16, 29 S.E.2d at 140. All of these factors must be considered because no one factor is controlling. *Id.*

As previously noted, Dr. Stanley is engaged in the independent calling of medicine. He is allowed to, and indeed he is expected to, use his independent judgment and special skills in the execution of his work. He has contracted to treat as many inmates as show up during his office hours for a fixed monthly price. There are no terms in his contract which call for termination based upon his exercise of his independent judgment. He is not in the regular employ of the Department of Correction; rather, he has a private medical practice to which he devotes his time. According to the affidavit of the Director of Health Services, contractual nurses and contractual physicians' assistants are subject to orders from the unit physicians. However, contractual physicians are not under that same control. Dr. Stanley's contract only requires him to provide services two days per week and he was at liberty to choose the specific days on which he would provide those services.

Applying these facts to the test above indicates that the Commission was correct in concluding that Dr. Stanley is not an "employee" of the Department. He exercises his independent judgment in treating inmates at Odom Correctional Center. Therefore, the State is not answerable for any allegations of negligent treatment or rendering of services on this basis.

The next question which we must address is whether the Department is answerable for allegations of negligence made against Dr. Stanley based upon the alternative theory of agency.

The United States Supreme Court was confronted with the similar question of whether a physician employed by North Carolina to provide medical services to state prison inmates acted under color of state law for the purposes of the maintenance of a law suit under 42 USCS § 1983. There, the doctor was a private physician who provided orthopedic services to inmates pursuant to a contract for services. *West v. Atkins*, 101 L.Ed.2d 40, 46 (1988). The doctor was paid a fixed sum to provide these services on a weekly basis and he also maintained a separate private practice away from the correctional facility. *Id.* The Court again noted that

MEDLEY v. N.C. DEPT. OF CORRECTION

[99 N.C. App. 296 (1990)]

" '[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.' " *Id.* at 53 (quoting *Estelle v. Gamble*, 50 L.Ed.2d 251 (1976) ). Because common law requires North Carolina to provide medical care to its prison inmates, even though the state employs physicians who exercise their professional judgment in order to fulfill this obligation, "[b]y virtue of this relationship, effected by state law," the Court concluded that the doctor was clothed with the authority of state law. *Id.* The Court then said that the doctor was " 'a person who may fairly be said to be a state actor.' " *Id.* (citation omitted).

There, just as here, the only medical care which plaintiff could have received would have been through the State. If Dr. Stanley acted negligently in rendering treatment to plaintiff, then the resultant injury was caused by the State's "exercise of its right to punish [Medley] by incarceration and [by denying] him a venue independent of the State to obtain needed medical care." *Id.* Likewise, the fact that this doctor was hired as a contractual employee without the same benefits or obligations applicable to other state employees does not alter the analysis applied in *West*.

Therefore, we conclude that the Commission erred in concluding that defendant was entitled to a judgment as a matter of law. Finding no factual dispute in this instance, we are compelled to rely on *West* and conclude that Dr. Stanley was an agent of the State for whose conduct the State may be answerable.

Furthermore, as *West* points out, the State is required under both the federal and state constitutions to provide adequate medical care to prisoners. If the State chooses to delegate this duty to another, it is still answerable for such conduct. *Id.* at 54.

Therefore, the State could be liable to Medley if Dr. Stanley's conduct was negligent since it hired him to perform its duty of providing medical care to Medley because "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *Id.*

Accordingly, this matter is reversed and remanded to the Industrial Commission for further proceedings consistent with the decision reached here today.

Reversed and remanded.

Judges GREENE and LEWIS concur.