SANDRA O. WILKERSON, Ancillary Administratrix of the ESTATE OF JOHNNIE ALAN WILKERSON, and SANDRA O. WILKERSON, Individually, Plaintiffs v. NORFOLK SOUTHERN RAILWAY COMPANY, and THE CITY OF DURHAM, a Municipal Corporation, Defendants

No. COA01-330

(Filed 16 July 2002)

## 1. Judges— one judge overruling another—summary judgment after Rule 12 ruling—different questions

A second judge had the authority to hear and decide defendant City's motion for summary judgment where another judge had denied in part defendant's motion to dismiss under N.C.G.S. § 1A-1, Rules 12(b)(6) and 12(c). The first judge determined the legal sufficiency of the complaint, taking the allegations as true, and the second decided whether there was any genuine issue of material fact and whether the movant was entitled to judgment as a matter of law.

## 2. Immunity— governmental—improvement of railroad crossing

The trial court did not err by finding that Durham had immunity in an action arising from an accident at a railroad crossing where plaintiff conceded that the City performed a governmental function in agreeing with the State to work on the crossing improvement, but argued that carrying out the decision was a ministerial undertaking. Plaintiff did not file suit against individual City employees and the distinction between discretionary and ministerial acts is important only when an individual pleads qualified or public officer immunity.

## 3. Immunity— governmental—railroad crossing

Durham was not liable in an action arising from a railroad crossing accident where the City did not own, operate or maintain the crossing and did not waive its immunity through the purchase of insurance or participation in a local government risk pool.

WILKERSON v. NORFOLK S. RY. CO.

[151 N.C. App. 332 (2002)]

**4. Cities and Towns— railroad crossing—safety improvement project—authority and control**

The trial court did not err in an action arising from a railroad crossing accident by finding that Durham had not exercised authority and control over a street regarding a safety improvement project where plaintiff asserted that the street was within municipal limits, that the City had asserted ownership and control during the project, and that the DOT had asked the City for permission to act on the project. The fact that the City has the authority to make certain decisions does not mean that the City is under an obligation to do so, and the City in this case had no duty to have the warning or safety devices in place.

**5. Cities and Towns— railroad crossing—duty to maintain clear view**

The trial court did not err in an action arising from a railroad crossing accident by granting summary judgment for Durham on the issues of whether the City had neglected a duty to keep foliage and other obstructions from blocking drivers' views of oncoming trains where the obstructions complained of were not on City property, the City did not have authority over the area, and the City did not have a duty to keep the area clear.

Appeal by plaintiff from order and judgment entered 6 September 2000 by Judge Orlando F. Hudson, Jr., in Durham County Superior Court. Heard in the Court of Appeals 22 January 2002.

*Law Offices of William F. Maready, by William F. Maready, Celie B. Richardson, and Gary V. Mauney, for plaintiff appellant.*

*Faison & Gillespie, by Reginald B. Gillespie, Jr., and Keith D. Burns, for the City of Durham defendant appellee.*

THOMAS, Judge.

Based on its interpretation of governmental immunity, the trial court in this case granted the summary judgment motion of defendant, the City of Durham (the City). Plaintiff appeals.

The complaint stems from a collision between a truck driven by Johnnie Alan Wilkerson and an Amtrak train at the Plum Street railroad crossing in Durham, North Carolina. The accident, which occurred on 18 June 1998, resulted in Wilkerson's death.

Plaintiff, Sandra O. Wilkerson, Ancillary Administratrix of the Estate of Johnnie Alan Wilkerson, argues five assignments of error. She contends the trial court erred by (I) overruling the previous order of another superior court judge; (II) finding that the City had immunity with regard to a safety improvement project at the crossing; (III) finding that the City did not have a ministerial duty to complete the safety improvement project within a reasonable time; (IV) finding that the City did not exercise authority and control over Plum Street regarding the safety improvement project; and (V) finding that the City did not have a duty to keep foliage and other obstructions from blocking drivers' views of oncoming trains. For the reasons herein, we affirm the order and judgment of the trial court.

The facts tend to show the following: Prior to 1992, the North Carolina Department of Transportation (DOT) conducted a study of railroad crossings in North Carolina. Among those examined was the Plum Street crossing (the crossing). The railroad tracks at the crossing were owned, operated, and maintained by defendant, Norfolk Southern Railway Company (Norfolk Southern).

DOT examined several features of the crossing, including the number of vehicles that crossed the tracks, the number and speed of trains passing through the crossing, the history of accidents over a ten-year period, and the existing safety precautions. DOT determined the crossing to be dangerous. It contacted the City in the spring of 1992 and proposed that the crossing's safety devices be improved with lights and gates installed.

The Durham City Council approved the proposal on 20 July 1992 and agreed to pay 20% of the construction cost and 50% of the maintenance cost. DOT was to administer the project and obtain federal funding. It was also responsible for contracting with Norfolk Southern to install the traffic control safety devices. DOT agreed to initially pay for the project but would be reimbursed by an 80% contribution from the federal government and the 20% contribution from the City.

The final agreement was executed by the parties on 14 September 1992. On 30 December 1992, DOT sent the City a supplemental agreement with the only modification being that the City's share of construction costs was reduced to 10%. The supplemental agreement was approved by the Durham City Council on 1 February 1993, but was not returned to DOT at that time.

WILKERSON v. NORFOLK S. RY. CO.

[151 N.C. App. 332 (2002)]

In 1993 and 1994, DOT worked on the preliminary engineering and asked Norfolk Southern to prepare full engineering plans and an estimate of costs. From 1994 to 1996, Norfolk Southern put the project on hold while it prepared the cost estimate and project plans and investigated the possible involvement of other railroad track owners. Norfolk Southern did not grant final approval until 17 July 1996.

On 9 August 1996, DOT forwarded a construction agreement to Norfolk Southern with a recitation that Norfolk Southern would begin work "as soon as possible." Norfolk Southern executed the agreement and returned it to DOT on 14 February 1997.

Also on 9 August 1996, DOT sent the City a letter asking for its approval of Norfolk Southern's plans and for the City to sign and return the supplemental agreement from 30 December 1992. This was the first time the City became aware that the supplemental agreement had not been returned to DOT. On 30 April 1997, the City approved Norfolk Southern's plans, materials list, and cost estimate. City Transportation Engineer Edward Sirgany was responsible for notifying DOT of the City's approval. However, Sirgany's office was damaged by Hurricane Fran in September 1996 and he "had a lot of the documents that got lost and flooded and destroyed." On 7 May 1997, the City executed and returned the 1992 supplemental agreement to DOT.

On 28 May 1997, DOT authorized Norfolk Southern to proceed with its work but nothing was done at the crossing for more than a year. The work began after the 18 June 1998 accident and was completed by 30 June 1998.

Plaintiff filed her complaint on 10 February 1999, alleging, *inter alia*, that the City was negligent and proximately caused Wilkerson's death by (1) delaying the return of the supplemental agreement to DOT from 30 December 1992 to 7 May 1997; (2) delaying approval of construction plans from August 1996 to April 1997; and (3) failing to remove a large mound of dirt, a metal building, and bushes at the crossing, all of which obstructed the decedent's view of the crossing and the oncoming train.

The City moved to dismiss portions of plaintiff's complaint pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(6) and 12(c) (2001). The trial court allowed the City's motion in part. It dismissed plaintiff's claim for punitive damages, her third cause of action (asserting a third-party beneficiary claim with respect to contracts between DOT

and the City and between DOT and Norfolk Southern regarding a signal upgrade), and her fourth cause of action (asserting a claim for infliction of severe emotional distress). Plaintiff was allowed to proceed with her claims for negligence in the execution and performance of the agreement for the safety improvements and for negligent failure to maintain the area surrounding the crossing.

The City later filed a summary judgment motion based on governmental immunity and a lack of duty to provide traffic control safety devices at, or to maintain, the crossing. The trial court granted the motion and dismissed plaintiff's action against the City. Plaintiff appeals.

While the trial court granted summary judgment for the City, plaintiff's case against Norfolk Southern remained alive. "A grant of partial summary judgment, because it does not completely dispose of the case, is an interlocutory order from which there is ordinarily no right of appeal." *Liggett Group v. Sunas*, 113 N.C. App. 19, 23, 437 S.E.2d 674, 677 (1993).

> However, an interlocutory order may nonetheless be appealed pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure if: (1) the action involves multiple claims or multiple parties, (2) the order is "a final judgment as to one or more but fewer than all of the claims or parties," and (3) the trial court certifies that "there is no just reason for delay."

*Yordy v. North Carolina Farm Bureau Mut. Ins. Co.*, 149 N.C. App. 230, 231, 560 S.E.2d 384, 385 (2002) (quoting N.C. Gen. Stat. § 1A-1, Rule 54(b) (1999)). Here, the trial court certified that "there is no just reason for delay in the entry of a final judgment dismissing Plaintiff's claims against the City." Having determined that the order and judgment fully complies with the requirements set forth in *Yordy*, we conclude plaintiff's appeal is properly before us and therefore turn to the merits of the case.

Summary judgment is appropriate when

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

N.C. Gen. Stat. § 1A-1, Rule 56(c) (2001). "On appeal from an order granting summary judgment, we must review the pleadings, affidavits

and all other materials produced by the parties at the summary judgment hearing to determine whether there existed any genuine issue of fact and whether one party was entitled to judgment as a matter of law." *Bradley v. Wachovia Bank & Trust Co.*, 90 N.C. App. 581, 582, 369 S.E.2d 86, 87 (1988). *See also Willis v. Town of Beaufort*, 143 N.C. App. 106, 108, 544 S.E.2d 600, 603, *disc. review denied*, 354 N.C. 371, 555 S.E.2d 280 (2001).

## Previous Order by Trial Court

[1] In her first assignment of error, plaintiff contends the trial court erred by overruling the previous order of another superior court judge. We disagree.

On 10 April 2000, the City filed a motion to dismiss plaintiff's complaint based on N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (failure to state a claim upon which relief can be granted) and N.C. Gen. Stat. § 1A-1, Rule 12(c) (judgment on the pleadings). On 30 May 2000, the City's motion was granted in part and denied in part. The trial court allowed plaintiff to proceed with her claims for negligence in the execution and performance of the agreement and for negligent failure to maintain the area surrounding the crossing.

The City then filed a motion for summary judgment on 23 June 2000. In support of its motion, the City asked the trial court to consider numerous affidavits from City employees, depositions, maps, photographs, and other documentary materials. On 6 September 2000, a different judge granted summary judgment on the remaining claims.

While plaintiff contends these separate rulings are in conflict, we do not agree that the first ruling rendered improper the subsequent grant of summary judgment. When the trial court considered the City's motion to dismiss based on Rule 12(b)(6) and Rule 12(c), it determined the legal sufficiency of plaintiff's complaint. There was no finding as to the merits of the City's defenses. The trial court took the allegations as true and concluded the complaint stated claims upon which relief could be granted. However, with the City's motion for summary judgment, the legal test was whether, on the basis of the materials presented to the trial court, there was any genuine issue as to any material fact and whether the movant was entitled to judgment as a matter of law. *See* N.C. Gen. Stat. § 1A-1, Rule 56(c). "[T]he denial of a motion to dismiss made under Rule 12(b)(6) does not prevent the court, whether in the person of the same or a different superior court

judge, from thereafter allowing a subsequent motion for summary judgment made and supported as provided in Rule 56." *Barbour v. Little*, 37 N.C. App. 686, 692, 247 S.E.2d 252, 256, *disc. review denied*, 295 N.C. 733, 248 S.E.2d 862 (1978); *Alltop v. Penney Co.*, 10 N.C. App. 692, 179 S.E.2d 885, *cert. denied*, 279 N.C. 348, 182 S.E.2d 580 (1971). *See also Smithwick v. Crutchfield*, 87 N.C. App. 374, 376, 361 S.E.2d 111, 113 (1987) (explaining that "[a] motion for judgment on the pleadings [does] not present the same question as that raised by the later motion for summary judgment[,]" so denial of a motion for judgment on the pleadings does not preclude a later judge from considering and allowing a motion for summary judgment). Accordingly, the second judge had the authority to hear and decide the City's motion for summary judgment. Plaintiff's first assignment of error is overruled.

### Immunity and Ministerial Duty

**[2]** By her next two assignments of error, plaintiff contends the trial court erred in finding that (1) the City had immunity with regard to the project and (2) the City did not have a ministerial duty to complete the project within a reasonable time. We disagree.

"In North Carolina the law on governmental immunity is clear. In the absence of some statute that subjects them to liability, the state and its governmental subsidiaries are immune from tort liability when discharging a duty imposed for the public benefit." *McIver v. Smith*, 134 N.C. App. 583, 585, 518 S.E.2d 522, 524 (1999), *disc. review dismissed as improvidently allowed*, 351 N.C. 344, 525 S.E.2d 173 (2000).

> The liability of a county for torts of its officers and employees is dependent upon whether the activity in which the latter are [sic] involved is properly designated "governmental" or "proprietary" in nature, "a county [being] immune from torts committed by an employee carrying out a governmental function" and "liable for torts committed [by an employee] while engaged in a proprietary function."

*Schmidt v. Breeden*, 134 N.C. App. 248, 252, 517 S.E.2d 171, 174 (1999) (quoting *Hare v. Butler*, 99 N.C. App. 693, 698, 394 S.E.2d 231, 235, *disc. review denied*, 327 N.C. 634, 399 S.E.2d 121 (1990)). The distinction between governmental and proprietary acts is as follows:

> When a municipality is acting "in behalf of the State" in promoting or protecting the health, safety, security or general wel-

fare of its citizens, it is an agency of the sovereign. When it engages in a public enterprise essentially for the benefit of the compact community, it is acting within its proprietary powers. In either event it must be for a public purpose or public use.

So then, generally speaking, the distinction is this: If the undertaking of the municipality is one in which only a governmental agency could engage, it is governmental in nature. It is proprietary and "private" when any corporation, individual, or group of individuals could do the same thing. Since, in either event, the undertaking must be for a public purpose, any proprietary enterprise must, of necessity, at least incidentally promote or protect the general health, safety, security or general welfare of the residents of the municipality.

*Britt v. Wilmington*, 236 N.C. 446, 450-51, 73 S.E.2d 289, 293 (1952).

Plaintiff argues the trial court's decision to grant summary judgment in favor of the City misconstrued accepted concepts of governmental immunity, because the creation of a nuisance (the unimproved crossing) was not a governmental, discretionary, or legislative event, regardless of what might otherwise be considered a governmental or discretionary function. *See Pierson v. Cumberland County Civic Ctr. Comm'n*, 141 N.C. App. 628, 540 S.E.2d 810 (2000).

Plaintiff concedes that the City Council performed a governmental function (to which immunity applies) when it considered and agreed to work on the crossing improvement project. However, plaintiff maintains that, after the decision was made and money appropriated, the City was liable. Once a discretionary function is complete, plaintiff notes, carrying out the matter further is a ministerial undertaking. For example, maintenance of city streets has been deemed a ministerial function. *See* N.C. Gen. Stat. § 160A-296 (2001); and *Millar v. Wilson*, 222 N.C. 340, 23 S.E.2d 42 (1942). Plaintiff asserts that, while a public official is engaged in governmental activities which involve discretion, "public employees perform ministerial duties." *Isenhour v. Hutto*, 350 N.C. 601, 610, 517 S.E.2d 121, 128 (1999). However, plaintiff has not filed suit against individual City employees. She filed suit against the City. It is only when an individual pleads qualified immunity or public officer immunity that the distinction between discretionary and ministerial acts is important. We decline plaintiff's invitation to add a ministerial category to the well-settled dichotomy of governmental and proprietary functions within the doctrine of sovereign immunity. "[D]espite our sympathy for the plaintiff

*WILKERSON v. NORFOLK S. RY. CO.*

[151 N.C. App. 332 (2002)]

in this case, we feel that any further modification or the repeal of the doctrine of sovereign immunity should come from the General Assembly, not this Court." *Steelman v. City of New Bern,* 279 N.C. 589, 595, 184 S.E.2d 239, 243 (1971).

Here, the City was carrying out a governmental function with respect to the improvement project. The record and the supplemental agreement indicate that the project was initiated by DOT, pursuant to a federal grant funded by the Surface Transportation and Uniform Relocation Assistance Act of 1987. All work on the project was to be performed by DOT and Norfolk Southern. The City's input was limited to a financial contribution of 10%.

[3] Plaintiff argues the City is nonetheless liable because its conduct was "so unreasonable as to constitute an abuse of discretion." *Lonon v. Talbert,* 103 N.C. App. 686, 692, 407 S.E.2d 276, 281 (1991). Plaintiff claims the City is liable because one who enters into an undertaking *"owes . . . the duty of exercising reasonable care with respect to such matters." Cathey v. Construction Co.,* 218 N.C. 525, 532, 11 S.E.2d 571, 575 (1940).

The City, meanwhile, maintains that it was an agent acting on behalf of the State and was not subject to an action in tort unless it waived governmental immunity. *See Colombo v. Dorrity,* 115 N.C. App. 81, 84, 443 S.E.2d 752, 755, *disc. review denied,* 337 N.C. 689, 448 S.E.2d 517 (1994). The City also argues that the construction and maintenance of public streets and bridges are governmental functions of a municipality. *See Reidsville v. Burton,* 269 N.C. 206, 210, 152 S.E.2d 147, 151 (1967). When municipalities lose immunity, it is because they have failed to maintain their own streets and sidewalks in a safe condition. *See Eakes v. City of Durham,* 125 N.C. App. 551, 481 S.E.2d 403 (1997); *McDonald v. Village of Pinehurst,* 91 N.C. App. 633, 372 S.E.2d 733 (1988); and *Millar,* 222 N.C. 340, 23 S.E.2d 42. Sirgany stated the City does not own, operate, or maintain the crossing. Because of this fact, the City's position is that it did not have a duty to install safety devices. *See Lavelle v. Schultz,* 120 N.C. App. 857, 463 S.E.2d 567 (1995), *disc. review denied,* 342 N.C. 656, 467 S.E.2d 715 (1996).

We note that "[a]ny city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance. Participation in a local government risk pool . . . shall be deemed to be the purchase of insurance for the purposes of this section." N.C. Gen. Stat. § 160A-485(a) (2001). The record contains

the affidavit of Laura W. Henderson, the City's Risk Manager. Henderson stated:

> 3. At no time during the month of June 1998, and specifically at no time on June 18, 1998, did the City have in force and effect a liability insurance policy providing coverage for claims arising out of or relating to any act or omission by persons employed in the City's Public Works Department, or its predecessor, the City's Transportation Department, or arising out of or relating to the activities and operations of the City's Public Works Department, or its predecessor, the City's Transportation Department.

> 4. Further, the City did not purchase any insurance policy indemnifying the City with respect to any of the matters alleged in Plaintiff's complaint.

This testimony clearly supports the finding that the City did not waive its immunity regarding the improvement project.

Additionally, plaintiff failed to allege that the City waived immunity by the purchase of insurance or by participation in a local government risk pool. "If a plaintiff does not allege a waiver of immunity by the purchase of insurance, the plaintiff has failed to state a claim against the governmental unit." *Reid v. Town of Madison*, 137 N.C. App. 168, 170, 527 S.E.2d 87, 89 (2000) (quoting *Mullins v. Friend*, 116 N.C. App. 676, 681, 449 S.E.2d 227, 230 (1994)).

Plaintiff's assignments of error are rejected.

### Exercise of Authority

[4] In her next assignment of error, plaintiff contends the trial court erred in failing to find that the City exercised authority and control over Plum Street regarding the safety improvement project. In support of her argument, plaintiff asserts that Plum Street is within the municipal limits of the City. Additionally, the City asserted ownership and control over Plum Street during all stages of the project. The process began with DOT *asking* the City Council for permission to act. The agreement stated DOT was without authority to act alone because the crossing was "on the Municipal Street System."

N.C. Gen. Stat. § 160A-298(c) (2001) authorizes a city to require "the installation, construction, erection, reconstruction, and improvement of warning signs, gates, lights, and other safety devices at grade crossings . . . ." Nonetheless,

[t]he fact that a city has the *authority* to make certain decisions, however, does not mean that the city is under an *obligation* to do so. The words "authority" and "power" are not synonymous with the word "duty." When the legislature intended to create a duty in Chapter 160A, it did so expressly. *See* G.S. 160A-296.

G.S. 160A-298 allows a city to exercise its discretion in requiring improvements at railroad crossings. There is no mandate of action. Courts will not interfere with discretionary powers conferred on a municipality for the public welfare unless the exercise (or nonexercise) of those powers is so clearly unreasonable as to constitute an abuse of discretion. *Riddle v. Ledbetter*, 216 N.C. 491, 493-94, 5 S.E. 2d 542, 544 (1939).

*Cooper v. Town of Southern Pines*, 58 N.C. App. 170, 173, 293 S.E.2d 235, 236 (1982). Therefore, the City had no duty to have the warning or safety devices in place. Plaintiff's assignment of error is therefore overruled.

### Duty to Maintain Railroad Right-of-Way

[5] By her final assignment of error, plaintiff argues the trial court erred in granting summary judgment on the issues of whether the City had a duty to keep foliage and other obstructions from blocking drivers' views of oncoming trains, and whether the City neglected the duty. We disagree.

Plaintiff claims the City's duty arises from common law and N.C. Gen. Stat. § 160A-296, which provides:

(a) A city shall have general authority and control over all public streets, sidewalks, alleys, bridges, and other ways of public passage within its corporate limits except to the extent that authority and control over certain streets and bridges is vested in the Board of Transportation. General authority and control includes but is not limited to:

(1) The duty to keep the public streets, sidewalks, alleys, and bridges in proper repair;

(2) *The duty to keep the public streets, sidewalks, alleys, and bridges open for travel and free from unnecessary obstructions[.]*

N.C. Gen. Stat. § 160A-296(a) (emphasis added). Plaintiff points to the testimony of Sirgany, who stated that trimming of foliage was part of

WILKERSON v. NORFOLK S. RY. CO.

[151 N.C. App. 332 (2002)]

"routine maintenance" done by "[the City's] street crews[,]" even on railroad rights-of-way, on portions where the City also has a duty.

The City, meanwhile, argues that it did not have authority over the land and foliage in question. "[I]n the absence of any control of the place and of the work there [is] a corresponding absence of any liability incident thereto. That authority precedes responsibility, or control is a prerequisite of liability, is a well recognized principle of law as well as of ethics." *Mack v. Marshall Field & Co.*, 218 N.C. 697, 700, 12 S.E.2d 235, 237 (1940). Based on this reasoning, the City believes it should not be held to a duty over an area that was controlled by the railroad.

Nowhere in plaintiff's complaint do we find an allegation that the obstructions existed on City property. Nor, in the face of the City's denial that the obstructions were on City property, do we find any evidence or forecast of evidence to the contrary. Because we agree with the City that authority is a prerequisite to responsibility, plaintiff's failure to allege or present evidence of the obstructions being on City property compels us to conclude that the obstructions complained of were not located on City property, the City did not have authority over the area, and the City did not have a duty to keep the area clear. We need not address the issue of whether the City would be liable had it owned the property where the alleged obstructions were located. Plaintiff's final assignment of error is therefore overruled.

The order and judgment of the trial court granting summary judgment in favor of the City is

Affirmed.

Chief Judge EAGLES and Judge CAMPBELL concur.