SUSAN NORMAN, Plaintiff v. NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Defendant

No. COA02-1053

(Filed 18 November 2003)

**1. Highways and Streets— stop sign—placement and maintenance—duty of State**

DOT did not owe plaintiff a duty in the placement and maintenance of a stop sign controlling the flow of traffic onto a highway close to a railroad crossing, and the Industrial Commission erred by finding DOT negligent as a matter of law in an action arising from an automobile-train collision at the crossing.

---

**2. Tort Claims Act— railroad crossing accident—contributory negligence**

Competent evidence existed to justify the Industrial Commission's conclusion, following an evidentiary hearing and findings, that the plaintiff in a railroad crossing action was not contributorily negligent. While DOT offered evidence that plaintiff should have realized that a train was approaching, reasonable inferences could have been drawn from the evidence that plaintiff's attention was focused on a stop sign to the right of the tracks and that she was slowing to obey that sign. The choice of inferences was for the Commission.

Appeal by defendant from the Decision and Order filed 2 June 1997 and from Decision and Order filed 7 May 2002 by the North Carolina Industrial Commission. Heard in the Court of Appeals 23 April 2003.

*Daniel J. Park, for plaintiff-appellee.*

*Attorney General Roy Cooper, by Special Deputy Attorney General William H. Borden, for defendant-appellant.*

GEER, Judge.

Plaintiff Susan Norman was injured when her car collided with a train at a railroad crossing in the town of Elkin. Defendant, the North Carolina Department of Transportation ("DOT"), has appealed from the North Carolina Industrial Commission's decisions under the State Tort Claims Act granting partial summary judgment to plaintiff on the issue of negligence and, after an evidentiary hearing, concluding that Ms. Norman was not contributorily negligent. Although we affirm the Commission's contributory negligence decision as supported by competent evidence, we reverse the decision granting partial summary judgment because genuine issues of material fact exist as to DOT's negligence. We remand for an evidentiary hearing on the issue of negligence.

Facts

In January 1989, at approximately 3:30 p.m., Ms. Norman, then eighteen years of age, was driving on Standard Street in the town of Elkin to her job at the Chatham Manufacturing Company. Standard Street crosses over railroad tracks, curves to the left, and runs parallel to the tracks for a distance. Standard Street then curves almost

NORMAN v. N.C. DEP'T OF TRANSP.

[161 N.C. App. 211 (2003)]

90 degrees to the left, re-crosses the railroad tracks, and continues a short distance until it intersects with N.C. Highway 268. At the second railroad crossing; there are no crossbars or other mechanized signals. There are, however, pavement markings indicating a railroad crossing.

At issue in this case is a stop sign placed 17 feet north of the second railroad crossing and 90 feet south of Highway 268. The Commission found that this stop sign controls the flow of traffic onto the highway. There is no other stop sign closer to the intersection with Highway 268. After reviewing a photograph of the stop sign and railroad tracks and considering the distance from Highway 268, DOT's Field Support Engineer, Harold Steelman, Jr., testified: "I think [the stop sign] would confuse me." He believed that a driver could be confused as to whether the stop sign regulated traffic crossing the railroad tracks or traffic entering Highway 268.

With respect to the question regarding who erected the stop sign, Mr. Steelman acknowledged that the State had responsibility for erecting any stop sign at the intersection with Highway 268, but asserted that DOT had not put up the stop sign on Standard Street. He pointed out that Standard Street was not in the state highway system.

Shortly after crossing the railroad tracks on Standard Street for the first time, Ms. Norman came to a stop at a traffic light. Phillip Ray Lyles testified in a deposition that he was two cars behind Ms. Norman at that intersection. While sitting at the light, he heard a train horn blow faintly. It sounded as if the train was a substantial distance away. He looked at the track, but did not see any sign of the train. After the stoplight turned green, the car between Ms. Norman and Mr. Lyles turned right and the car in which Mr. Lyles was riding pulled up immediately behind Ms. Norman.

As they continued to travel down Standard Street, Mr. Lyles did not see any sign of a train and did not hear a horn again. As they approached the second crossing of the railroad tracks, he noticed that Ms. Norman's brake lights came on and she slowed down to approximately two to three miles per hour. Almost simultaneously with hearing the train horn blow again, Mr. Lyles saw Ms. Norman's car collide with the train. Prior to the collision, he had never seen the train.

Ms. Norman remembered little that occurred prior to the accident. She testified that while she had previously crossed the tracks,

she had never seen a train at that crossing. DOT's witness Wayne Atkins confirmed that trains traveled through town only once per week. Ms. Norman further testified that she did not believe that she heard the train whistle because had she heard a whistle, she would not have crossed the tracks. Ms. Norman's car was on the first set of tracks when she was struck by the train.

The police accident report indicated that the train engineer did not see Ms. Norman's car until just before the impact. He said that he had operated his bell and horn west of the first railroad crossing. The police officer interviewed two witnesses, one of whom heard the bell and horn, while the other was not sure.

Procedural History

In January 1992, plaintiff filed a claim against DOT under the State Tort Claims Act, N.C. Gen. Stat. § 143-291 (2001). Under the Tort Claims Act, "jurisdiction is vested in the Industrial Commission to hear claims against the State of North Carolina for personal injuries sustained by any person as a result of the negligence of a State employee while acting within the scope of his employment." *Guthrie v. N.C. State Ports Authority*, 307 N.C. 522, 536, 299 S.E.2d 618, 626 (1983).

DOT filed a motion to dismiss for failure to state a claim for relief together with three supporting affidavits. Deputy Commissioner Mary Hoag heard defendant's motion to dismiss on 27 August 1996 and entered an order granting defendant's motion to dismiss under Rule 12(b)(6) on the ground that plaintiff's claim "filed herein fails to state a claim upon which relief can be granted."

On appeal, the Full Commission reviewed DOT's three affidavits, various exhibits, the deposition of Phillip Lyles, and the deposition of Mr. Steelman. In an order filed 2 June 1997, the Full Commission reversed the deputy commissioner concluding that "there was a genuine issue as to defendant's negligence and, therefore, defendant's Motion to Dismiss was granted in error." Despite this finding of an issue of fact, the Commission then concluded that "[d]efendant, by and through the named employees herein, was negligent in its placement of, or in its causing to be placed and then maintenance of the stop sign in question," citing N.C. Gen. Stat. § 143-291 *et seq*. The Commission further concluded that "[a]s the proximate result of defendant's negligence, on 16 January 1989, plaintiff was involved in an accident resulting in bodily injuries and other damages." The

Commission remanded the proceeding to the deputy commissioner for a hearing to determine whether plaintiff was contributorily negligent and, if not, damages.

Following an evidentiary hearing on contributory negligence and damages, Deputy Commissioner Edward Garner, Jr. filed an order on 15 April 1999 finding that plaintiff had been contributorily negligent by driving her vehicle onto the railroad crossing without looking to see whether a train was approaching and determining whether she could cross the tracks safely. In an order filed 7 May 2002, the Full Commission reversed, repeating its prior conclusion that plaintiff was injured as a proximate result of defendant's negligence in placing and maintaining the stop sign and finding that plaintiff was not contributorily negligent. The Commission found that plaintiff had been injured to an extent greater than or equal to $500,000.00, granted a credit to defendant for $145,000.00 received in settlement proceeds from other tortfeasors, and awarded $355,000.00 in damages.

DOT has appealed both the Commission's 2 June 1997 order granting partial summary judgment as to negligence and the Commission's 7 May 2002 order awarding damages. Under N.C. Gen. Stat. § 143-293, either party may appeal a decision of the Commission:

> Such appeal shall be for errors of law only under the same terms and conditions as govern appeals in ordinary civil actions, and the findings of fact of the Commission shall be conclusive if there is any competent evidence to support them.

N.C. Gen. Stat. § 143-293 (2001).

I

[1] DOT first argues that the Commission improperly entered summary judgment for plaintiff on the issues of negligence and proximate causation. We conclude that genuine issues of material fact exist as to the negligence of DOT and therefore remand for an evidentiary hearing on that issue.

Because the Commission considered materials outside of the pleadings, DOT's motion to dismiss pursuant to Rule 12(b)(6) was converted into a motion for summary judgment. *Caswell Realty Assoc. v. Andrews Co.*, 128 N.C. App. 716, 719, 496 S.E.2d 607, 609-10 (1998) ("[A]s matters outside of the pleadings were considered, the motions to dismiss were converted to motions for summary judgment."). When reviewing the Commission's entry of summary judg-

ment, "instead of addressing the questions which we are usually limited to pursuant to N.C. Gen. Stat. § 143-293, we must determine whether the pleadings, interrogatory answers, affidavits or other materials contained a genuine question of material fact, and whether at least one party was entitled to a judgment as a matter of law." *Medley v. N.C. Dep't of Corr.*, 99 N.C. App. 296, 298, 393 S.E.2d 288, 289 (1990), *aff'd on other grounds*, 330 N.C. 837, 412 S.E.2d 654 (1992).

In a Tort Claims Act case, the Commission's duty in addressing a summary judgment motion is limited to determining the existence of genuine issues of material fact and stops short of resolving such issues without an evidentiary hearing. As stated by our Supreme Court, "generally if a review of the record leads the appellate court to conclude that the trial [tribunal] was resolving material issues of fact rather than deciding whether they existed, the entry of summary judgment is held erroneous." *Alford v. Shaw*, 327 N.C. 526, 536, 398 S.E.2d 445, 452 (1990).

The Commission's 2 June 1997 order on its face reveals that it improperly resolved issues of fact regarding DOT's negligence. In Conclusion of Law No. 2, the Commission expressly concluded that "there was a genuine issue as to defendant's negligence . . . ." Upon reaching that conclusion, it was the duty of the Commission to reverse the deputy commissioner's order dismissing plaintiff's claim and remand for a full evidentiary hearing as to DOT's negligence.

Our review of the evidence before the Commission confirms that genuine issues of material fact exist regarding DOT's negligence. To prove negligence, a plaintiff must show that: "(1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury." *Bolkhir v. N.C. State Univ.*, 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988). In this case, the critical issue is whether the summary judgment evidence established conclusively that DOT owed a duty as to the placement and maintenance of the sign.

In finding DOT negligent as a matter of law, the Commission held that "the improper location of a stop sign controlling ingress to a State Highway is the legal responsibility of the Department of Transportation no matter where the sign is located and no matter who actually places the sign." Citing N.C. Gen. Stat. § 20-158(a)

(2001), the Commission found: "Because the stop sign in question controlled the approach to a highway under the control of defendant, and in the absence of other proof, the Full Commission finds that the sign was in fact placed in its location by personnel of defendant or someone acting at the direction of defendant." In addition, the Commission held that "[d]efendant was under a duty to inspect the sign to make certain that it was properly installed."

N.C. Gen. Stat. § 20-158(a) provides:

(a) The Department of Transportation, with reference to State highways, and local authorities, with reference to highways under their jurisdiction, are hereby authorized to control vehicles:

(1) At intersections, by erecting or installing stop signs requiring vehicles to come to a complete stop at the entrance to that portion of the intersection designated as the main traveled or through highway. Stop signs may also be erected at three or more entrances to an intersection.

(2) At appropriate places other than intersections, by erecting or installing stop signs requiring vehicles to come to a complete stop.

The Commission erred in holding that this statute gives rise to a duty on the part of DOT.

Although this Court has not considered the effect of this specific statute, it has concluded that analogous statutes authorizing municipalities to erect signs do not, standing alone, give rise to a duty of care. In *Cooper v. Town of Southern Pines*, 58 N.C. App. 170, 293 S.E.2d 235 (1982), the plaintiff, who was struck by a train, sued the town, alleging in part that the town was negligent in failing to require adequate safeguards at a known hazardous railroad crossing. The plaintiff argued that N.C. Gen. Stat. § 160A-298(c) (2001), which authorizes a city to require the installation of safety devices at grade crossings, created a duty of care that the town breached. In rejecting this contention, the Court held:

The fact that a city has the *authority* to make certain decisions, however, does not mean that the city is under an *obligation* to do so. The words "authority" and "power" are not synonymous with the word "duty."

*Cooper*, 58 N.C. App. at 173, 293 S.E.2d at 236 (emphasis original). The Court explained that the statute allowed a city to exercise its discretion in requiring safety devices, but "[t]here is no mandate of action." *Id.* The Court therefore held as a matter of law that the town was not negligent in failing to require the installation of automatic signals at the railroad crossing. *Id.* at 174, 293 S.E.2d at 237. *See also Estate of Jiggetts v. City of Gastonia*, 128 N.C. App. 410, 414, 497 S.E.2d 287, 290 (1998) (city "owed plaintiffs no affirmative duty to control traffic" on a city street when N.C. Gen. Stat. § 160A-300 (1994) authorized the city to control traffic, but did not expressly require it to do so); *Wilkerson v. Norfolk Southern Railway Co.*, 151 N.C. App. 332, 342, 566 S.E.2d 104, 111 (2002) (city could not be held liable for delaying the installation of safety devices at a railroad crossing because the city, although authorized to require safety devices, "had no duty to have the warning or safety devices in place").

Here, N.C. Gen. Stat. § 20-158(a)(1) only "authorize[s]" DOT to erect or install stop signs. While DOT had authority to install a stop sign at the intersection of Standard Street with N.C. Highway 268, this statute did not mandate that it do so. The statute does not, therefore, establish that DOT had a duty to erect or necessarily had responsibility for the stop sign at issue in this case. DOT cannot be held liable for negligence based solely on the failure to erect a properly located sign at the intersection with N.C. Highway 268. DOT must have breached a duty independent of N.C. Gen. Stat. § 20-158(a).

A duty to install a stop sign may arise if the evidence establishes that DOT·knew or should have known that the intersection was hazardous. *See Smith v. N.C. Dep't of Transp.*, 156 N.C. App. 92, 101, 576 S.E.2d 345, 352 (2003) (upholding Industrial Commission determination that DOT was negligent in connection with a railroad crossing based on the State's knowledge, because of earlier accidents and analysis from engineers, that the crossing was hazardous); *Phillips v. N.C. Dep't of Transp.*, 80 N.C. App. 135, 137-38, 341 S.E.2d 339, 341 (1986) (DOT's "duty to maintain the right-of-way necessarily carried with it the duty to make periodic inspections" and it could be found negligent based on implied notice of a hazardous condition on the right-of-way). In this case, plaintiff offered no evidence that DOT knew or should have known that the intersection of Standard Street and N.C. Highway 268 was hazardous or that any hazardous condition existed on the State right-of-way.

Alternatively, if the evidence established that DOT did erect a stop sign to govern that intersection, then it was obligated to do so in

conformity with the Manual on Uniform Control Devices for Streets and Highways, published by the United States Department of Transportation. N.C. Gen. Stat. § 136-30(a) (2001) ("All traffic signs and other traffic control devices placed on a highway in the State highway system must conform to the Uniform Manual."). DOT could, under N.C. Gen. Stat. § 136-30(a), be found negligent based on a failure to comply with the Uniform Manual when erecting the stop sign.

Even though the evidence would support a finding that the stop sign at issue in this case did not comply with the Uniform Manual, an issue of fact exists whether DOT installed the stop sign. The Commission found that "[b]ecause the stop sign in question controlled the approach to a highway under the control of defendant, and in the absence of other proof, the Full Commission finds that the sign was in fact placed in its location by personnel of defendant or someone acting at the direction of defendant." DOT, however, offered evidence suggesting that it was not responsible for the installation of the stop sign, but rather that it had been erected by the Town of Elkin. Mr. Steelman testified in his deposition that the stop sign at issue did not have the sticker placed by DOT on those signs that it erects and that DOT's Division of Traffic Engineers had denied having installed the sign.

In further addressing DOT's contention that it did not install the stop sign, the Commission asserted, in a statement mislabeled as a finding of fact, that "the improper location of a stop sign controlling ingress to a State Highway is the legal responsibility of the Department of Transportation no matter where the sign is located and no matter who actually places the sign." This statement is an incorrect conclusion of law. N.C. Gen. Stat. § 136-30(a) provides that the DOT "shall have the power to control all signs within the right-of-way of highways in the State highway system." *See also Shapiro v. Toyota Motor Co.*, 38 N.C. App. 658, 662, 248 S.E.2d 868, 870 (1978) (when a city street becomes part of the state highway system, DOT becomes responsible for its maintenance including the "control of all signs and structures within the right-of-way"). Thus, unless the stop sign was within the right-of-way of N.C. Highway 268, DOT did not have an obligation to inspect for and remedy the improperly placed stop sign. *See Wilkerson*, 151 N.C. App. at 343, 566 S.E.2d at 111 ("Because we agree with the City that authority is a prerequisite to responsibility, plaintiff's failure to allege or present evidence of the obstructions being on City property compels us to conclude that . . . the City did

not have authority over the area, and the City did not have a duty to keep the area clear."); *Phillips*, 80 N.C. App. at 138, 341 S.E.2d at 341 ("[T]he defendant's duty to maintain the right-of-way necessarily carried with it the duty to make periodic inspections . . . ."). DOT cannot be held liable for failing to discover the defective sign without a finding that the sign was within the State right-of-way.

Plaintiff argues that the negligence decision may be based on DOT's failure to install safety devices at the railroad crossing. While the Commission found, in its 7 May 2002 decision addressing contributory negligence, that "[d]efendant was negligent in failing to provide the warning signs, markings and traffic signals that were necessary," the other, more detailed findings of fact supporting that general finding discuss only the stop sign. Since the Commission did not base its summary judgment decision on any negligence by DOT as to the railroad crossing, we will not address that argument in the first instance.

The evidence before the Commission does not establish DOT's negligence as a matter of law. DOT offered sufficient evidence to raise issues of fact regarding its responsibility for the stop sign. The evidence was not, however, unequivocal and DOT is not, therefore, entitled to summary judgment on that issue.

Defendants argue alternatively that they are entitled to summary judgment on the issue of proximate cause. We disagree. In *Jordan v. Jones*, 314 N.C. 106, 109, 331 S.E.2d 662, 664 (1985), the plaintiff's decedent was killed when a bus disregarded a stop sign and "stop ahead" sign and collided with the car in which she was a passenger. The driver of the bus and the bus company's safety director testified in their depositions that the stop sign was misplaced, causing the driver to fail to see the sign. Our Supreme Court reversed a grant of summary judgment to DOT, rejecting its argument that any negligence by it in the placement of the stop sign was not the proximate cause of the accident, but rather the cause of the accident was the bus driver's failure to observe the stop sign. The Court held: "The very basis of the defendants' claim against the DOT is that [the bus driver] failed to see the signs at the intersection because of the DOT's negligent failure to install proper signals." *Id.*

Likewise, in this case, plaintiff has offered evidence that the placement of the stop sign was confusing and that the collision was due to her efforts to comply with the improperly located stop sign. The Commission could find that plaintiff's collision was proximately

caused by the stop sign. The Commission, therefore, properly declined to grant summary judgment with respect to proximate cause.

## II

**[2]** DOT argues that the Commission erred in failing to find that plaintiff was contributorily negligent. When reviewing a decision of the Commission under the Tort Claims Act following an evidentiary hearing, this Court addresses two questions: "(1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision." *Simmons v. N.C. Dep't of Transp.*, 128 N.C. App. 402, 405-06, 496 S.E.2d 790, 793 (1998). With respect to findings of fact, "the existence of contrary evidence is irrelevant if there was also competent evidence to support the Full Commission's findings." *Smith*, 156 N.C. App. at 98, 576 S.E.2d at 350. Since contributory negligence is a mixed question of law and fact, this Court must also determine whether the Commission's findings of fact support its conclusion that plaintiff was not contributorily negligent. *Id.* at 97, 576 S.E.2d at 349. We hold that competent evidence exists to support the Commission's findings, which in turn justify its conclusion that Ms. Norman was not contributorily negligent.

With respect to the issue of contributory negligence, the Commission first found that "the location of the stop sign was confusing" and that the misplacement of the stop sign "resulted in plaintiff being hit by an oncoming train when she slowed to obey the stop sign that was just beyond the railroad crossing." The Commission further found:

Defendant alleges contributory negligence by plaintiff due to her being familiar with this railroad crossing from "cruising" on weekend nights. The evidence indicates that trains only traveled along these rails during the weekdays. There was testimony that other witnesses heard a faint train whistle blow, but plaintiff never heard the train whistle. Plaintiff was not contributorily negligent, in that she was trying to obey the negligently placed stop sign which caused her to brake as she crossed the railroad tracks and be hit by the train. Plaintiff was distracted while trying to obey the negligently placed stop sign that was supposed to control an intersection with a state maintained highway in which defendant has the duty to provide for safe ingress and egress.

NORMAN v. N.C. DEP'T OF TRANSP.

[161 N.C. App. 211 (2003)]

A review of the record reveals that each of the factual findings related to contributory negligence is supported by competent evidence.

The finding that the placement of the stop sign was confusing is supported by testimony from Mr. Steelman, a Field Support Engineer with DOT: "I think it would confuse me." When viewing a photograph of the railroad crossing where the accident occurred, Mr. Steelman testified that he could not tell whether the stop sign at issue controlled traffic crossing the tracks or traffic entering the highway.

Ms. Norman testified that while she had crossed the tracks before, she had never before encountered a train. DOT's witness Wayne Atkins confirmed that trains traveled through the Town of Elkin only once a week and only during the daytime. Ms. Norman's testimony at the hearing suggested that, even as of that date, she still did not understand the stop sign to be directing her to stop later on at the highway, as DOT has argued, rather than at the stop sign itself.

With respect to the question whether Ms. Norman should have heard or seen the train, Phillip Lyles, a passenger in the car immediately behind Ms. Norman's car, testified that when he heard the train's horn, it sounded as if it was a substantial distance away and that he did not see the train or hear it again until it collided with Ms. Norman's car. Ms. Norman testified that had she heard the train's whistle, she would not have crossed the railroad tracks.

Defendant argues that because of Ms. Norman's loss of memory, the evidence does not support a finding that she was trying, when hit, to obey the improperly placed stop sign. That inference may, however, be drawn from the testimony. Carl McCann, a witness for DOT, testified that a person attempting to obey that stop sign would start slowing down and braking some distance prior to the stop sign. Mr. Lyles, who was watching Ms. Norman's car, saw her brake lights come on, the car slow down, and then the brake lights come on a second time. According to Mr. Lyles, Ms. Norman was traveling only two to three miles per hour immediately prior to the collision. This testimony is sufficient to support the Commission's inference that Ms. Norman had slowed down in an attempt to obey the stop sign.

Defendant argues that these findings of fact, even if supported by evidence, are insufficient to justify the conclusion that plaintiff was not contributorily negligent. Defendant first contends that plaintiff was obligated to stop prior to the railroad tracks, citing N.C. Gen.

Stat. § 20-142.1 (2001). Under § 20-142.1(a)(3) and (4), a person is required to stop not less than 15 feet from the nearest rail of the railroad whenever a train approaching within 1,500 feet of the crossing emits a signal audible from that distance and the train is an immediate hazard because of its speed or nearness to the crossing or when an approaching train is "plainly visible and is in hazardous proximity to the crossing." The evidence was, however, conflicting as to whether the train issued a signal audible from 1,500 feet of the highway crossing and whether the approaching train was plainly visible.

The statute also provides that a "[v]iolation of this section shall not constitute negligence per se." N.C. Gen. Stat. § 20-142.1(d). As our Supreme Court has explained, when a statutory violation "is declared not to be negligence *per se*, the common law rule of ordinary care applies, and a violation is only evidence to be considered with other facts and circumstances in determining whether the violator used due care." *Carr v. Murrows Transfer, Inc.*, 262 N.C. 550, 554, 138 S.E.2d 228, 231 (1964).

The Commission concluded, citing *Nourse v. Food Lion, Inc.*, 127 N.C. App. 235, 488 S.E.2d 608 (1997), *aff'd per curiam*, 347 N.C. 666, 496 S.E.2d 379 (1998), that Ms. Norman was not contributorily negligent. *Nourse* relied upon the well-established principle that a plaintiff who does not discover an obvious hazard is not contributorily negligent as a matter of law if "there is some fact, condition, or circumstance which would or might divert the attention of an ordinarily prudent person from discovering or seeing an existing dangerous condition . . . ." *Id.* at 241, 488 S.E.2d at 613 (internal quotation marks omitted). *See also Newton v. New Hanover County Bd. of Educ.*, 342 N.C. 554, 564, 467 S.E.2d 58, 65 (1996) (quoting *Walker v. Randolph Co.*, 251 N.C. 805, 810, 112 S.E.2d 551, 554 (1960)) (A plaintiff's failure to discover and avoid a visible defect "is not applicable where there is 'some fact, condition, or circumstance which would or might divert the attention of an ordinarily prudent person from discovering or seeing an existing dangerous condition.' ").

The Commission's findings that Ms. Norman did not hear the train whistle and, therefore, was not aware that the train was approaching and that she failed to see the train because she was distracted by the misplaced stop sign are sufficient to invoke this doctrine. While DOT offered evidence suggesting that Ms. Norman should have realized that a train was approaching, reasonable inferences can also be

drawn from the evidence, as the Commission did, that Ms. Norman's attention was focused on the stop sign to the right side of the tracks and that she was slowing to obey that stop sign. The decision regarding which inference to draw was for the Commission and may not be overturned on appeal. "Inferences from circumstances when reasonably drawn are permissible and that other reasonable inferences could have been drawn is no indication of error; deciding which permissible inference to draw from evidentiary circumstances is as much within the fact finder's province as is deciding which of two contradictory witnesses to believe." *Snow v. Dick & Kirkman, Inc.*, 74 N.C. App. 263, 267, 328 S.E.2d 29, 32 (citing *Blalock v. City of Durham*, 244 N.C. 208, 92 S.E.2d 758 (1956)), *disc. review denied*, 314 N.C. 118, 332 S.E.2d 484 (1985).

We conclude that the Commission's findings of fact as to the defense of contributory negligence are supported by competent evidence and that those findings in turn support its conclusion that plaintiff was not contributorily negligent. The case must, however, be remanded for a trial as to DOT's negligence. Because of our disposition of the negligence issue, we need not consider appellant's remaining arguments.

Affirmed in part. Reversed and remanded in part. .

Judges TIMMONS-GOODSON and BRYANT concur.