MARSHA JENKINS, Employee, Plaintiff-Appellee v. PIEDMONT AVIATION
SERVICES, Employer, KEMPER GROUP, Carrier, Defendant-Appellants

No. COA00-119

(Filed 4 December 2001)

**1. Workers' Compensation— Commission's authority to review deputy commissioner's decision—no appeal**

The Industrial Commission had the authority to review and set aside a deputy commissioner's prior decision where plaintiff did not appeal from that decision. *Moore v. City of Raleigh*, 135 N.C. App. 332, held only that the plaintiff's actions did not constitute excusable neglect or any other of the grounds for setting aside a judgment, not that the Commission never had the power to set aside an otherwise final judgment. The power of the Commission to set aside former judgments is analogous to that conferred upon the courts by N.C.G.S. § 1A-1, Rule 60(b)(6).

**2. Workers' Compensation— credit to defendant for plaintiff's outside income—not authorized**

The Industrial Commission did not err in a workers' compensation action by setting aside a deputy commissioner's award of a credit for outside income received by plaintiff where the deputy commissioner's judgment was void. N.C.G.S. § 97-42 specifically authorizes the Commission to award credits for payments the employer has made which had not been ordered at the time of payment; the Commission is not granted the broad power to award any and all credits it may desire.

**3. Workers' Compensation— credit to defendant—time of disability**

A deputy commissioner exceeded his authority in a workers' compensation action, and the Industrial Commission properly set aside the award even without an appeal, where the deputy commissioner found that plaintiff was actively employed until 19 April 1988 and provided a credit to defendant, and the Commission found that plaintiff was not disabled until 15 December 1989. The Commission is not bound by the deputy commissioner's findings, there is competent evidence to support the Commission's finding and the Commission does not have jurisdiction to award credits for income plaintiff received before plaintiff became disabled.

**4. Appeal and Error— preservation of issues—assignment of error—no citation of authority—abandoned**

An assignment of error in a workers' compensation action regarding the amount of a credit awarded to defendants was deemed abandoned where defendants cited no case law or statutory authority in support of their argument. Furthermore, there was competent evidence in the record to support the Commission's findings of fact.

Appeal by defendants from an opinion and award entered 24 September 1999 by the North Carolina Industrial Commission. Heard in the Court of Appeals 10 January 2001.

*Tania L. Leon, P.A., by Tania L. Leon, for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Mel J. Garofalo, Erica B. Lewis and Shelley W. Coleman, for defendant-appellants.*

McGEE, Judge.

Piedmont Aviation Services (employer) and Kemper Group (collectively defendants) appeal from an opinion and award of the North Carolina Industrial Commission filed 24 September 1999, in which the Commission reversed a deputy commissioner's decision that defendants were entitled to receive a credit of $125,321.39 against the award of compensation previously paid to Marsha Jenkins (plaintiff) and to suspend payment of workers' compensation benefits to her.

Plaintiff was injured on 28 July 1986 when she was struck on the back of her head and neck by a mirror that fell off the wall in a hotel where plaintiff was staying while she was serving as a sales representative for employer. Plaintiff suffered a cervical neck strain. She was initially informed by her supervisor that the injury was not work-related, and she was directed to file her claim for medical care with employer's health insurance carrier.

Plaintiff was told by another supervisor in July 1988 that her original neck injury was, in fact, work-related. The supervisor informed plaintiff that he would file all the necessary workers' compensation forms within the two-year statute of limitations period for workers' compensation claims. However, unknown to plaintiff, her employer's group health insurance carrier continued paying for plaintiff's medical treatment, not employer's workers' compensation carrier.

Plaintiff sustained a second work-related injury in April 1988 when boxes of supplies fell and hit her hand, injuring her wrist and thumb. Plaintiff missed some work due to her wrist injury from April 1988 until January 1989. Plaintiff had surgery in January 1989 on her wrist and was unable to return to work until 10 April 1989.

Employer changed its group health insurance carrier to Blue Cross/Blue Shield in December 1989. Blue Cross refused to pay for plaintiff's further tests and treatment of the cervical strain because Blue Cross determined plaintiff's injury was work-related. Plaintiff ended her job with employer on 15 December 1989. On 6 March 1990, she filed a Form 33 request for hearing concerning her cervical strain. Employer responded arguing that plaintiff's claim was barred by N.C. Gen. Stat. § 97-24 for plaintiff's failure to file her claim within two years following the accident.

An opinion and award filed 27 November 1990 by Deputy Commissioner William L. Haigh held that plaintiff's neck injury sustained on 28 July 1986 was compensable and that plaintiff last worked for employer on 15 December 1989. Deputy Commissioner Haigh concluded that, based on the facts, employer was estopped from asserting the two-year statute of limitations as a bar to plaintiff's claim for workers' compensation. Employer appealed to the Commission. The Commission filed an opinion and award on 7 October 1991 holding that employer had failed to file a Form 19 report of injury with its workers' compensation carrier on behalf of plaintiff in violation of N.C. Gen. Stat. § 97-92 and affirmed the order of the deputy commissioner.

Plaintiff filed a Form 33 request for hearing on 11 May 1992 because employer's workers' compensation carrier refused to pay her workers' compensation benefits. A hearing was held by Deputy Commissioner Richard B. Ford to determine if "the disabilities which the plaintiff suffers since January 5, 1990 [are] the result of and due to the injury which she sustained on July 28, 1986" and "to what further compensation, if any, is the plaintiff entitled[.]" An opinion and award was filed on 7 January 1994 by Deputy Commissioner Ford in which he concluded that (1) plaintiff was entitled to temporary total disability compensation benefits and payment for past, present and future medical expenses resulting from the 28 July 1986 injury, and (2) defendants were entitled to a credit for both compensation paid to plaintiff and for royalties collected by plaintiff for musical compositions in which she had collaborated subsequent to 19 April 1988. The opinion and award did not determine the amount of credit owed

to defendants or how the credit was to be applied against plaintiff's future workers' compensation payments. The opinion and award also cited no statutory provision or authority for awarding the credit. At the time of plaintiff's hearing before Deputy Commissioner Ford, defendants had not paid plaintiff any workers' compensation payments for her 28 July 1986 cervical injury. Plaintiff received a disability payment on 30 April 1994 for accrued benefits for a period ·beginning 15 December 1989.

Following a hearing to determine "what amount of credit [] the Defendants [are] entitled to take from the compensation awarded to the Plaintiff by [Deputy Commissioner Ford]," Deputy Commissioner Mary Moore Hoag filed an opinion and award on 6 August 1996 finding that the evidence presented thus far established that defendants were entitled to a credit from the compensation previously paid to plaintiff because of royalty income earned by plaintiff since April 1988 and allowing defendants to cease further workers' compensation payments to plaintiff. Deputy Commissioner Hoag also ordered that the record remain open for further documentary evidence to determine the amount of the credit to which defendants were entitled.

A second opinion and award was filed by Deputy Commissioner Hoag on 16 October 1997 deciding only whether defendants were entitled to a credit as previously stated by Deputy Commissioner Ford and, if so, the amount of the credit. The 16 October 1997 opinion and award incorporated Deputy Commissioner Ford's 7 January 1994 opinion and award. Deputy Commissioner Hoag found that, beginning in 1992, plaintiff earned royalty income and concluded, based on N.C. Gen. Stat. § 97-30 and on Deputy Commissioner Ford's previous opinion, that defendants were entitled to a credit in the amount of $125,321.39. In addition, Deputy Commissioner Hoag concluded that defendants were entitled to suspend payments to plaintiff until the total credit for royalty income was exhausted. She further found that plaintiff had a presumption of continuing disability and ordered an independent medical examination.

Plaintiff appealed to the Commission. In an opinion and award dated 24 September 1999, the Commission reversed the 16 October 1997 opinion and award of Deputy Commissioner Hoag. The Commission concluded that plaintiff's disability began on 15 December 1989 and that defendants were not entitled to a credit for plaintiff's royalty payments. The Commission found that Deputy

Commissioner Ford did not have the authority "to give defendants [a] credit for earnings from intellectual work or property rights acquired at a time when plaintiff was working and earning her regular wages from defendant[.]" The Commission also found that Deputy Commissioner Ford's award of a credit was void and unenforceable. However, the Commission concluded defendants were entitled to a credit for plaintiff's earnings from her home-based jewelry making business for 1992 and 1993. The Commission further concluded defendants had not rebutted plaintiff's presumption of continuing disability. Defendants appeal the decision of the Commission.

I.

[1] Defendants first argue the Commission lacked the authority to review and set aside Deputy Commissioner Ford's award and opinion because plaintiff did not appeal from that decision. The record before us shows neither party appealed Deputy Commissioner Ford's decision of 7 January 1994. Plaintiff did file a timely appeal to the Commission of the 16 October 1997 decision of Deputy Commissioner Hoag.

Our Supreme Court has stated that the "statutes creating the Industrial Commission have by implication clothed the Commission with the power to provide this remedy [to set aside one of its former judgments], a remedy related to that traditionally available at common law and equity and codified by Rule 60(b)." *Hogan v. Cone Mills Corp.*, 315 N.C. 127, 137, 337 S.E.2d 477, 483 (1985). The Commission, "in the exercise of supervision over its own judgments," may utilize this remedy "when the paramount interest in achieving a just and proper determination of a claim requires it." *Id.* at 129, 337 S.E.2d at 478.

While defendants acknowledge the holding in *Hogan*, they specifically argue that our Court's decision in *Moore v. City of Raleigh*, 135 N.C. App. 332, 520 S.E.2d 133 (1999), *cert. denied*, 351 N.C. 358, 543 S.E.2d 131 (2000), prohibits the Commission from setting aside Deputy Commissioner Ford's opinion and award because an application for review of that opinion and award was not filed by plaintiff within fifteen days pursuant to N.C. Gen. Stat. § 97-85. In *Moore*, the Commission "waived the fifteen day rule on the basis that plaintiff's *pro se* representation before the deputy commissioner constituted excusable neglect[.]" *Moore* at 334, 520 S.E.2d at 135. As a result of the excusable neglect, the Commission determined it had authority to set aside the judgment. Our Court reversed the Commission, stating

the plaintiff's actions did not constitute excusable neglect; consequently, the Commission did not have the authority to review or set aside a final order of the deputy commissioner. The order became final because the plaintiff had failed to follow the proper channels of appeal under N.C.G.S. § 97-85. However, our Court did not rule the Commission never had the power to set aside an otherwise final judgment. Our Court acknowledged the Commission has the power to set aside a judgment when there is "[m]istake, inadvertence, surprise, or excusable neglect[,]" or "on the basis of newly discovered evidence," or "on the grounds of mutual mistake, misrepresentation, or fraud." *Moore* at 336, 520 S.E.2d at 137 (citations omitted). In *Moore*, the plaintiff's actions did not constitute excusable neglect, nor any of the other reasons required to set aside a judgment.

While it is true plaintiff did not appeal Deputy Commissioner Ford's award or file a motion with the Commission to set aside Deputy Commissioner Ford's award, such acts are not required. Again, the power of the Commission to set aside former judgments is "analogous to that conferred upon the courts by N.C.R. Civ. P. 60(b)(6)" and the remedy the Commission may provide is "related to that traditionally available at common law and equity and codified by Rule 60(b)." *Hogan* at 137, 337 S.E.2d at 483. This power includes the ability to set aside judgments even when a party has not made a motion to do so. Although "Rule 60 says that the court is to act 'on motion,' it does not deprive the court of the power to act in the interest of justice in an unusual case where its attention has been directed to the necessity for relief by means other than a motion." *Taylor v. Triangle Porsche-Audi, Inc.*, 27 N.C. App. 711, 717, 220 S.E.2d 806, 811 (1975), *cert. denied*, 289 N.C. 619, 223 S.E.2d 396 (1976).

[2] N.C. Gen. Stat. § 1A-1 Rule 60(b) (1999) confers upon the Commission the ability to set aside a judgment where it finds

    (1) Mistake, inadvertence, surprise, or excusable neglect;

    (2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

    (3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

    (4) The judgment is void;

(5) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) Any other reason justifying relief from the operation of the judgment.

In the case before us, the Commission made specific findings of fact that Deputy Commissioner Ford's judgment was void because the Commission did not have the power to award a credit for property rights acquired by plaintiff for the lyrics to the two songs prior to the date of her disability. If in fact the deputy commissioner did not have authority to enter the judgment, the judgment is void and the Commission has the authority under N.C.G.S. § 1A-1 Rule 60(b)(4) to set aside the judgment.

Defendants argue the Commission erred by setting aside the deputy commissioner's judgment when that judgment was not void. When a "court acts in excess of its authority . . . 'its judgment . . . is void and of no effect. A lack of jurisdiction or power in the court entering a judgment always avoids the judgment, and a void judgment may be attacked whenever and wherever it is asserted, without any special plea.' " *Allred v. Tucci*, 85 N.C. App. 138, 143, 354 S.E.2d 291, 295, *cert. denied*, 320 N.C. 166, 358 S.E.2d 47 (1987) (quoting *Hanson v. Yandle*, 235 N.C. 532, 535, 70 S.E.2d 565, 568 (1952)). In the case before us, the Commission was correct in asserting that the deputy commissioner had "no jurisdiction over earnings, investments or property rights obtained prior to an employee's disablement due to a work-related injury or prior to the time defendant's obligation to pay indemnity or wage loss compensation arises."

Under the Workers' Compensation Act, the only statutes which allow the Commission to award credits are N.C. Gen. Stat. § 97-42 (1999) and N.C. Gen. Stat. § 97-42.1 (1999). These statutes allow for a credit for amounts voluntarily paid by the employer before the workers' compensation benefits are awarded. The "laudable purpose" of this section is "to encourage voluntary payments to workers while their claims to compensation are being disputed and they are receiving no wages." *Evans v. AT&T Technologies*, 103 N.C. App. 45, 48, 404 S.E.2d 183, 185 (1991), *rev'd on other grounds*, 332 N.C. 78, 418 S.E.2d 503 (1992).

A "credit" is a deduction by the employer of a prior payment made to an injured employee from the compensation benefit that

is now due the employee. The only statute in North Carolina authorizing a credit is N.C.G.S. § 97-42. It provides, in order to encourage voluntary payments by the employer while the worker's claim is being litigated and he is receiving no wages, that any payments made by the employer to the injured employee which were not due and payable when made, may in certain cases be deducted from the amount of compensation due the employee.

*Gray v. Carolina Freight Carriers*, 105 N.C. App. 480, 484, 414 S.E.2d 102, 104 (1992). This credit applies to payments made by the employer, not to any and all other payments the employee may receive from outside sources.

In the case before us, the royalties plaintiff may have received were not payments the employer made; therefore, the Commission did not have the authority under N.C.G.S. § 97-42 to offset these amounts against any future payment the employer is required to make. Our Supreme Court has interpreted the provisions of N.C.G.S. § 97-42 as

typically limited to situations where . . . an employer pays a disabled employee wages intended as compensation (and not as a gratuity) throughout the period of the latter's absence from work, or where the employer pays the employee a lump sum in settlement of an anticipated award but a change in the latter's condition causes the award to be diminished.

*Moretz v. Richards & Associates*, 316 N.C. 539, 541, 342 S.E.2d 844, 846 (1986). Plaintiff's uncontested testimony was that

I was intermittently working from August of '89 until November of '89. And they made me use my sick time so I still got paid. Once my sick time was exhausted, which was November of '89, the company made me go on leave in January of '90, and it was medical leave with no pay[.]

Therefore, the opinion and award of Deputy Commissioner Ford stated that defendants were owed a credit, when defendants had not paid any disability payments to plaintiff, but rather had required plaintiff to use her sick leave which she had earned by working overtime. Fringe benefits, such as sick leave time, are not disability payments. *See Moretz*, 316 N.C. at 541, 342 S.E.2d at 846 (fringe benefits are of a contractual nature rather than proceeds that are grounded in the workers' compensation law).

The Commission can only credit the employer with payments the employer itself has previously made. In addition, defendants did not show a change in plaintiff's medical condition in order to reduce the compensation owed and were ordered by Deputy Commissioner Ford to begin disability compensation payments to plaintiff for her work-related injury. There is evidence in the record tending to show that Deputy Commissioner Ford's opinion exceeded statutory authority under N.C.G.S. § 97-42 in that (1) defendants had made no compensation disability payments to plaintiff and (2) defendants had not shown a change in condition of plaintiff to cause the ordered compensation payments to be reduced. Defendant's argument that N.C.G.S. § 97-42 grants the Commission the broad power to award any and all credits the Commission may desire is without merit. N.C.G.S. § 97-42 specifically authorizes the Commission to award credits for payments the *employer* has made which at the time of payment had not been ordered payable by the Commission.

[3] Furthermore, the Commission found that plaintiff was not disabled until 15 December 1989. While Deputy Commissioner Ford stated in his findings of fact that plaintiff was actively employed until 19 April 1988, the Commission is not bound by the deputy commissioner's findings.

> The deputy commissioner's findings of fact are not conclusive; only the Full Commission's findings of fact are conclusive. The Commission may "weigh the evidence [presented to the deputy commissioner] and make its own determination as to the weight and credibility of the evidence." The Commission may strike the deputy commissioner's findings of fact even if no exception was taken to the findings.

*Keel v. H & V Inc.*, 107 N.C. App. 536, 542, 421 S.E.2d 362, 367 (1992) (quoting *Hobgood v. Anchor Motor Freight*, 68 N.C. App. 783, 785, 316 S.E.2d 86, 87 (1984)). There is competent evidence to support the Commission's finding that plaintiff in fact became disabled in December 1989. Plaintiff continued to work for defendant until 15 December 1989. While she missed some periods of work from April 1988 until December 1989, there is competent evidence in the record which shows she missed this time due to the injury to her wrist. The first evidence of any workers' compensation payment for plaintiff's cervical strain injury is on 30 April 1994. Any disability payments plaintiff may have received from April 1988 until December 1989 were due to her wrist injury. Defendants did not even recognize plaintiff's

cervical neck injury as a compensable injury until the opinion and award filed 27 November 1990 by Deputy Commissioner Haigh in which he held that plaintiff's neck injury on 28 July 1986 was compensable. Plaintiff's wrist injury was not before Deputy Commissioner Ford. The only injury at issue before him was plaintiff's 1986 neck injury. As a result of the Commission's finding that plaintiff became disabled on 15 December 1989, Deputy Commissioner Ford's award was again without jurisdiction, as the Commission does not have jurisdiction to award credits for income plaintiff received before plaintiff became disabled. The credit defendants claim and the credit the deputy commissioner awarded do not fall within the language of N.C.G.S. § 97-42 or its intended purpose. We overrule this assignment of error.

II.

[4] Defendants next argue the Commission erred in determining the amount of credit defendants were entitled to receive for payments they made during weeks that plaintiff earned income from her home-based jewelry making business. However, defendants have cited no case law or statutory authority in support of their argument. Rule 28(b)(5) of the North Carolina Rules of Appellate Procedure requires the appellant's argument to "contain citations of the authorities upon which the appellant relies." N.C.R. App. P. 28(b)(5). *See State v. Thompson*, 110 N.C. App. 217, 222, 429 S.E.2d 590, 592 (1993); *Byrne v. Bordeaux*, 85 N.C. App. 262, 354 S.E.2d 277 (1987). Furthermore, there is competent evidence in the record to support the Commission's findings of fact. We deem this assignment of error abandoned.

In review, the Commission's opinion and award voiding Deputy Commissioner Ford's determination of a credit against plaintiff's royalty income and reversing Deputy Commissioner Hoag's opinion and award is affirmed. The Commission's opinion and award granting defendants a week by week credit totaling $2,586.00 for plaintiff's income from her jewelry making business is affirmed.

Affirmed.

Judges WYNN and JOHN concur.