SAMUEL SMITH, PLAINTIFF v. N.C. DEPARTMENT OF TRANSPORTATION, DEFENDANT

No. COA02-146

(Filed 18 February 2003)

**1. Tort Claims Act— train and tractor-trailer accident—contributory negligence**

The Industrial Commission did not err by finding that plaintiff was not contributorily negligent in an action brought under the Tort Claims Act for an accident between a train and plaintiff's tractor-trailer where plaintiff's truck was struck while it was stuck on railroad tracks even though defendant contends plaintiff violated N.C.G.S. § 20-116(h) by taking the wrong truck route and generally did not exercise due care in crossing the railroad tracks, because: (1) plaintiff was on the truck route when he turned onto the road with the railroad crossing; (2) the pertinent truck route sign at the intersection failed to give required weight maximums; and (3) there were no signs warning defendant of any danger from crossing except a sign located on the other side of the crossing, plaintiff was a commercial driver with thirty years of experience and determined that the crossing was safe after he studied the crossing momentarily, and other commercial drivers had also determined that the same crossing was safe to cross.

**2. Tort Claims Act— requirements—specific negligent act by a specific state employee—name of negligent employee of State agency**

The Industrial Commission did not err in an action arising out of an accident between a train and a tractor-trailer at a railroad crossing by allegedly failing to follow the requirements of the Tort Claims Act under N.C.G.S. §§ 143-291 and 143-297 to find a specific negligent act by a specific state employee and to name in the claimant's affidavit the negligent employee of the State agency, because: (1) the names and information provided in plaintiff's affidavit gave defendant sufficient information to enable the agency to investigate the employee actually involved rather than all employees; (2) it was not necessary under the circumstances for plaintiff to have included the name of the employee in charge of placing the signage at the railroad crossing; and (3) the Industrial Commission found that defendant Department of Transportation's failure to erect adequate signage was the proximate cause of plaintiff's accident.

SMITH v. N.C. DEP'T OF TRANSP.

[156 N.C. App. 92 (2003)]

3. **Tort Claims Act— train and tractor-trailer accident—negligent maintenance of railroad crossing**

The Industrial Commission did not err in an action brought under the Tort Claims Act arising out of an accident between a train and a tractor-trailer at a railroad crossing by finding that defendant Department of Transportation was negligent in its maintenance of the pertinent railroad crossing even though defendant asserts it took all reasonable and prudent steps to protect the public by creating a truck route, because: (1) there was sufficient evidence in the record to support the findings that defendant had a duty to ensure safety in the area of the railroad crossing, breached that duty, and caused the damages to plaintiff; and (2) the truck route sign that plaintiff encountered did not indicate the weight limits of this particular route, and the proximate cause remains the lack of signage warning plaintiff of the low drag risk immediately prior to the crossing.

4. **Damages and Remedies— reduction—trailer loss, wrecker costs, site cleanup and storage fees**

The Industrial Commission erred in an action brought under the Tort Claims Act arising out of an accident between a train and a tractor-trailer at a railroad crossing by reducing the damages awarded for plaintiff's trailer loss, wrecker costs, site cleanup and storage fees, because: (1) while the full Commission is the factfinder and makes the determinations as to credibility, the invoices and estimates introduced through plaintiff's testimony were allowed into evidence without objection from defendant; and (2) nothing in the record supports the approximately fifty percent devaluation of the deputy commissioner's award.

5. **Damages and Remedies— reduction—lost income and additional costs**

The Industrial Commission erred in an action brought under the Tort Claims Act arising out of an accident between a train and a tractor-trailer at a railroad crossing by reducing the damages awarded for plaintiff's lost income and additional costs, because: (1) defendant cannot assert the lack of competency of this evidence rendered by plaintiff's own testimony as grounds to reduce the award as there was no objection to its receipt; (2) there is no evidence that such a reduction would equal fifty percent of the total award as only income or profits are subject to such calcu-

lations; and (3) plaintiff's testimony is not too speculative to establish damage.

Judge TYSON concurring in a separate opinion.

Appeal by plaintiff and defendant from Opinion and Award entered 29 November 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 9 October 2002.

*Morris York Williams Surles & Barringer, LLP, by Gregory C. York, for plaintiff appellant-appellee.*

*Attorney General Roy Cooper, by Assistant Attorney General Richard L. Harrison, for defendant appellant-appellee.*

McCULLOUGH, Judge.

This appeal arises out of a collision between a Norfolk-Southern train and plaintiff Samuel Smith's tractor-trailer on 22 September 1994. Plaintiff filed a complaint under the N.C. Tort Claims Act, N.C. Gen. Stat. § 143-291, *et seq.*, on 19 September 1997 against defendant N.C. Department of Transportation (NCDOT), alleging that Garland B. Garrett (Sec. of Transportation), David Allsbrook (Engineering Division 5 Manager), Patrick B. Simmons (Director of NCDOT Rail Division), and other "unknown persons" of NCDOT were allegedly negligent in maintaining the safety of the railroad crossing at which the accident occurred. Defendant filed an answer on 29 October 1997, denying any negligence on its part and further asserting the defense of contributory negligence.

Plaintiff is an independent tractor-trailer operator from New York and has driven commercial trucks for over 30 years. On 22 September 1994, he was leased to Allied Van Lines to transport household goods from New Jersey to Cary, North Carolina. The only directions to the final destination plaintiff had were those given to him by the customer. Following those, he exited off of Interstate 40 onto southbound Aviation Parkway. Aviation Parkway intersects with Highway 54 at a T-intersection. A regulatory truck route sign directed trucks to turn right onto eastbound Highway 54 at that intersection, yet plaintiff turned left, onto westbound Highway 54. Shortly thereafter, plaintiff made a right onto southbound Morrisville-Carpenter Road. This road is on an incline. After turning onto this road, he quickly came upon a railroad crossing. When plaintiff attempted to go over the crossing, the underside of his trailer dragged and became lodged on

the tracks. Plaintiff could not undo what had been done. Shortly, a train came and being unable to stop, crashed into plaintiff's vehicle. Plaintiff himself was unhurt in the accident, but alleged damages in the amount of $82,892.63.

This matter was heard before Deputy Commissioner Amy Pfeiffer on 16 October 2000. In an Opinion and Award entered 18 May 2001, the Deputy Commissioner found that defendant was negligent for failing to erect adequate signage on southbound Aviation Parkway or on Highway 54 to warn of the danger of low vehicles dragging due to the grade of the road, and that this was the proximate cause of the accident and damages. Damages were awarded to plaintiff in the amount of $84,053.63, which exceeded the amount claimed by plaintiff and the amounts in the evidence of record.

Defendant appealed to the Full Commission and hearing was held on 29 October 2001. In an Opinion and Award entered 29 November 2001, the Full Commission held that "[t]he appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the [Deputy Commissioner's] Opinion and Award except with respect to the measure of damages."

As to contributory negligence, the Commission found that there were no signs on the route taken by plaintiff sufficient to give notice that the grade crossing was low and that he was in danger of dragging. Further, the Commission found that the evidence was insufficient to show by the greater weight that plaintiff violated N.C. Gen. Stat. § 20-116(h) (trucks must follow designated truck routes), noting that plaintiff had directions which gave only one route to his destination, he was unfamiliar with North Carolina roads, and that his job frequently required him to drive on routes not designated as truck routes. Further, the Commission also found that plaintiff was not negligent by crossing over the tracks because no sign indicating maximum weight was passed prior to the crossing and that plaintiff did not recognize the crossing as dangerous.

As to defendant's negligence, the Commission found that it had a duty and responsibility to inspect railroad crossings for safety and to erect "adequate signage" marking the crossings that may pose a danger to vehicles. Defendant was on notice that the crossing at issue was dangerous. A similar incident involving a tractor-trailer being lodged on the tracks and being struck by a train occurred on 29 November 1993. Apparently, there once were "risk of drag" signs along that strip of road. However, commercial drivers so often

ignored the signs, that they removed them, and opted to make a mandatory truck route on eastbound Highway 54 to lead trucks away from the area. Thus

> [d]espite being aware of the potential danger to motorists, and despite its duty to do the same, defendant through its employees and agents failed to place adequate signage at and near the Aviation Parkway/Highway 54 intersection that would warn motorists traveling from this direction, or those motors [sic] traveling southbound on Aviation Parkway, that a potentially dangerous railroad crossing was imminent. This failure to erect adequate signage was the proximate cause of plaintiff's September 22, 1994 accident.

As to damages, the Commission found that the reasonable damages were as follows:

| | |
|---|---|
| To the Tractor: | $ 5,973.63 |
| To the Trailer: | $ 9,625.00 |
| Equipment Lost and Expenses in Locating a Substitute Trailer: | $ 4,500.00 |
| Wrecker Fees, Site Clean-up Costs, and Storage Fees: | $ 1,700.00 |
| Lost Income for 22 September 1994 through 18 November 1994: | $21,000.00 |

The Commission awarded plaintiff $42,498.63, although the above numbers add up to $42,798.63. The Commission noted that plaintiff's estimates were based on gross income rather than net income as to the lost income calculation, basing its award on net income.

Defendant appeals from the Full Commission's Opinion and Award. Defendant makes several assignments of error and brings forth the following questions on appeal: (I) Was plaintiff's contributory negligence of failing to take proper and reasonable care and intentionally disregarding the regulatory traffic signs the proximate cause of his accident? (II) Did the Full Commission err when it failed to follow the requirements of N.C. Gen. Stat. § 143-291, *et seq.*, which requires the finding of a specific act of negligence, committed

by a negligent state employee, acting within the scope of their employment? (III) Did the Industrial Commission err when finding negligence where the evidence revealed that defendant had taken all reasonable and prudent steps to protect the public?

## I.

**[1]** Defendant first contends that the Full Commission erred by finding that plaintiff was not contributorily negligent.

> Under the Tort Claims Act, "when considering an appeal from the Commission, our Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision." In a proceeding under the Tort Claims Act, "[f]indings of fact by the Commission, if supported by competent evidence, are conclusive on appeal even though there is evidence which would support a contrary finding."

*Fennel v. N.C. Dep't of Crime Control & Pub. Safety*, 145 N.C. App. 584, 589, 551 S.E.2d 486, 490 (2001), *cert. denied*, 355 N.C. 285, 560 S.E.2d 800 (2002) (citations omitted); *see* N.C. Gen. Stat. § 143-293 (2001). "Negligence and contributory negligence are mixed questions of law and fact and, upon appeal the reviewing court must determine whether facts found by the Commission support its conclusion of . . . negligence." *Barney v. Highway Comm.*, 282 N.C. 278, 284, 192 S.E.2d 273, 277 (1972).

Defendant argues that evidence in the record established that plaintiff was contributorily negligent because he violated N.C. Gen. Stat. § 20-116(h) and generally did not exercise due care in crossing the railroad tracks. As such, contrary to the findings of the Full Commission, defendant contends that plaintiff's recovery is barred by his contributory negligence. *See* N.C. Gen. Stat. § 143-291 and -299.1 (2001).

As to violation of N.C. Gen. Stat. § 20-116(h), which establishes truck routes and makes it a Class 2 misdemeanor for vehicles that are over posted maximum weight limits to drive on the posted routes, defendant points out that plaintiff failed to avoid the railroad crossing by disregarding the visible truck route sign and failing to find an alternative route to his destination. *See* N.C. Gen. Stat. § 20-116(h) (while mandating the adherence to posted truck routes, it also provides that no violation of this statute occurs when trucks drive on

prohibited roads "when its destination is located solely on that highway, road or street."). Indeed, evidence in the record showed that plaintiff turned left onto Highway 54, while a truck route sign, although with no weight limit on it, directed him to turn right. Further, evidence showed that plaintiff did not look for an alternate route to his final destination, as plaintiff did not avail himself of an office of Allied Van Lines which was nearby.

While we note that some evidence in the record may have supported findings contrary to that of the Full Commission, our standard of review is such that the existence of contrary evidence is irrelevant if there was also competent evidence to support the Full Commission's findings. The record does provide competent evidence to this effect, as it was shown that the statutory truck route extended not only to the right of the Aviation Parkway/Highway 54 intersection, but also to the left. In fact, it extended beyond the intersection of Highway 54 and Morrisville-Carpenter Road. Therefore, plaintiff was on the truck route when he turned onto the road with the railroad crossing. Further, evidence showed that the truck route sign at the Aviation Parkway/Highway 54 intersection failed to give required weight maximums. The findings of the Full Commission that plaintiff did not violate N.C. Gen. Stat. § 20-116(h) were based on competent evidence, and these findings supported its conclusions of law.

As to whether plaintiff exercised reasonable care by proceeding over the railroad crossing, defendant reiterates that plaintiff ignored the regulatory sign. In addition, plaintiff proceeded over the railroad crossing even after he had inspected it for several moments before turning onto Morrisville-Carpenter Road, noting that this road was on an incline and that from his vantage point in his cab, he could not see the road on the other side of the crossing. There was a steep downslope, and he knew that his trailer only had a clearance of one-foot. Defendant points out that on the other side of the crossing was a weight limit sign for the crossing. Had plaintiff seen the sign, he would have known that he exceeded the weight limit. Thus plaintiff should have ascertained the risk of drag, and was negligent in not doing so.

The record shows that there were no signs warning defendant of any danger from the crossing except that one sign located on the other side of it. Plaintiff, a commercial driver with 30 years of experience, studied the crossing momentarily and deemed it safe to cross. Nothing warned him otherwise, as he would have expected if there was any danger to be encountered. Evidence showed that other com-

mercial drivers had also determined that the same crossing was safe to cross. It was noted that defendant, in delivering household furnishings, often ventured onto smaller roads and was experienced in doing so. The Full Commission, as fact-finder, made its determinations and concluded that his determination was warranted. As above, there is competent evidence in the record to support the findings of the Full Commission and those findings support its conclusions of law. This assignment of error is overruled.

## II.

**[2]** Defendant next argues that the Full Commission erred by failing to follow the requirements of the Tort Claims Act. N.C. Gen. Stat. § 143-291, *et seq.* Defendant contends that the Tort Claims Act requires a finding of a specific act of negligence committed by a negligent state employee acting within the scope of their employment. Defendant contends that, since the Full Commission failed to do so, its Opinion and Award must be reversed.

In N.C. Gen. Stat. § 143-291, the establishing statute of the Act, it is set forth that the Industrial Commission "shall determine whether or not each individual claim [against the State or its agencies] arose as a result of the negligence of any officer, employee . . . under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina." N.C. Gen. Stat. § 143-291(a) (2001). Dealing with procedures of such claims, N.C. Gen. Stat. § 143-297 provides requirements of a valid claim under the Act, namely the filing of an affidavit including the name of the claimant, name of the negligent state parties, and other general information about the accident and injury. N.C. Gen. Stat. § 143-297 (2001).

> The purpose of G.S. 143-297(2), requiring a claimant under the Tort Claims Act to name in the affidavit the negligent employee of the State agency, is to enable the agency to investigate the employee actually involved rather than all employees.

*Northwestern Distributors, Inc. v. North Carolina Dept. of Transp.*, 41 N.C. App. 548, 551-52, 255 S.E.2d 203, 206, *cert. denied*, 298 N.C. 367, 261 S.E.2d 123 (1979).

Defendant argues that plaintiff has not complied with these requirements, and further that the Full Commission has erred by not finding a specific negligent act by a specific state employee. We cannot agree.

Plaintiff's affidavit read in pertinent part:

That [Samuel Smith] hereby files a claim against the North Carolina Department of Transportation . . . for damages resulting from the negligence of Garland B. Garrett, Secretary of Transportation; David Allsbrook, Engineering Division 5 Manager; Patrick B. Simmons, Director of the NCDOT Rail Division; and unknown employees of the Department of Transportation who were directly responsible for maintaining the safety of the Morrisville Carpenter Road railroad crossing, #734753J.

These names and information gave defendant sufficient information to "enable the agency to investigate the employee actually involved rather than all employees." *Id.* It was not necessary under the circumstances for plaintiff to have included the name of Brian Pleasants, the employee in charge of placing the signage at the crossing.

As to the Full Commission being required to find a specific act by a specific state employee, its Opinion and Award, after listing the names in plaintiff's affidavit, made the following findings of fact:

23. The Department of Transportation employee, Brian Pleasants, who was responsible for placing signage in the general area that is the subject of this claim, was not instructed to place a warning sign at the intersection of Aviation Parkway and Highway 54. There is no physical reason why the appropriate signage could not have been placed either at the intersection in question or elsewhere on southbound Aviation Parkway.

24. Despite being aware of the potential danger to motorists, and despite its duty to do the same, defendant through its employees and agents failed to place adequate signage at and near the Aviation Parkway/Highway 54 intersection that would warn motorists traveling from this direction, or those motors [sic] traveling southbound on Aviation Parkway, that a potentially dangerous railroad crossing was imminent. This failure to erect adequate signage was the proximate cause of plaintiff's September 22, 1994 accident. Plaintiff's expert witness corroborates this assessment.

We recognize that "[b]efore an award of damages can be made under the Tort Claims Act, there must be a finding of a negligent act by an officer, employee, servant or agent of the State." *Taylor v. Jackson*

*School*, 5 N.C. App. 188, 191, 167 S.E.2d 787, 789 (1969). We fail to see how the Full Commission has failed to comply with the statute. This assignment of error is overruled.

## III.

**[3]** Lastly, defendant contends that the Full Commission erred by finding that it was negligent in its maintenance of the railroad crossing. Our standard of review here is the same as under section I.

Defendant asserts that it had taken all reasonable and prudent steps to protect the public by creating the truck route. Defendant supports this proposition with the fact that it was aware of the drag risk at the crossing and had put up signs warning of that risk. N.C. Gen. Stat. § 136-18(5) (2001) (Dept. of Transportation is empowered to make rules, regulations, and ordinances for the use of the State highways.). When these warnings went unheeded by some commercial drivers resulting in the same sort of accident as in the present case, defendant made the decision to design and implement a designated truck route to divert trucks away from the crossing. *Id.*; N.C. Gen. Stat. § 20-116(h). Thus, defendant contends its duty to provide for safe travel was met when the truck route was created.

However, there is sufficient evidence in the record to support the findings of the Full Commission that defendant had a duty to ensure safety in the area of the railroad crossing, breached that duty, and caused the damages to plaintiff. The evidence showed that the State knew the railroad crossing presented a hazardous situation through earlier accidents and analysis from engineers, but there were no signs on the path that plaintiff took to warn him of the low drag risk presented at the railroad crossing. At one time there were such low drag signs, but the State removed them and opted to create the truck route to divert traffic away. However, it has already been noted that the truck route sign that plaintiff encountered did not indicate the weight limits of this particular route, plus the truck route included the stretch of Highway 54 that intersects with Morrisville-Carpenter Road. The only signs posting weight limits was located on the opposite side of the railroad crossing from the direction that plaintiff was traveling. Signs warning of the low drag risk were to be placed at certain points to warn drivers, in addition to the truck route, according to the area supervisor. Yet, either through a lack of communication or outright failure, these signs were never erected even though they were said to be needed "ASAP" in 1991. Finally, supervisors of the area failed to inspect the area for the signs. This being so, the proxi-

mate cause remains the lack of signage warning plaintiff of the low drag risk immediately prior to the crossing.

There is competent evidence in the record to support the findings of the Full Commission and those findings support its conclusions of law. This assignment of error is overruled.

Plaintiff also appeals from the Full Commission's Opinion and Award. Plaintiff makes several assignments of error and brings forth the following questions on appeal: (I) Did the Full Commission err in not accepting as fact the stipulated damages for plaintiff's trailer and with respect to wrecker costs, site cleanup, and storage fees? (II) Did the Full Commission err in not accepting as fact the uncontradicted evidence of plaintiff regarding lost income and additional tractor repair costs?

Additional facts are necessary for this portion of the opinion. Prior to the hearing, the parties stipulated that certain damage invoices and estimates were admissible into evidence. ("The parties stipulate that the following documents and/or physical evidence are admissible into evidence: (a) Damage invoices . . . ."). These included estimates for the repair of plaintiff's tractor, *(one for $5,973.63, and another for $6,604.44)*, a total loss evaluation for the trailer in the amount of $18,625.00, and wrecker fee costs, site clean-up costs and storage fees totaling $3,455.00. In addition, plaintiff contends that testimony proved (1) his lost income to be in the amount of $42,000.00; (2) additional costs for location and replacement of damaged equipment in the amount of $9,000.00; and (3) additional tractor damage repair in an amount of $5,000.00.

The Opinion and Award of the Full Commission listed the stipulations of the parties. It noted that "[t]he parties stipulated into the evidence in this matter exhibits one through three, which consist of damages invoices . . . ." However, it also included a disclaimer that read, "[t]he Industrial Commission is not bound by the stipulation of the parties, however, and is free to make its own findings with respect to the stipulated damages."

The Full Commission, instead, found as fact that the reasonable damages to the tractor were $5,973.63, to the trailer were $9,625.00, for wrecker fees, site cleanup, and storage fees were $1,700.00. As to lost income, the Full Commission awarded $21,000.00, and stated that "[t]he damages estimated by plaintiff were based on gross income rather than net income and the Full Commission based its

damage award on net income." As to additional costs for location and replacement of damaged equipment, the Full Commission awarded $4,500.00.

These findings as to damages were significantly lower than the findings of the Deputy Commissioner, which found that the damages to the tractor to be $10,973.63, to the trailer to be $18,625.00, fees and clean-up costs to be $3,455.00, as to lost income $42,000.00, and additional costs for location and replacement of damaged equipment to be $9,000.00.

I.

[4] Plaintiff's first argument is that the Full Commission erred by superseding its authority in reducing the damages awarded for plaintiff's trailer loss, wrecker costs, site cleanup and storage fees. The standard of review from defendant's appeal applies equally to plaintiff's appeal.

Plaintiff argues that the disregard for the stipulations as to the trailer loss, wrecker costs, site cleanup and storage fees is inconsistent with prior decisions of this Court and prays that this Court reinstate the damages found by the Deputy Commissioner. Stipulation to a particular fact has the effect of " 'eliminat[ing] the necessity of submitting that issue of fact to the [fact-finder].' " *Blackmon v. Bumgardner*, 135 N.C. App. 125, 134, 519 S.E.2d 335, 341 (1999) (quoting *Smith v. Beasley*, 298 N.C. 798, 800-01, 259 S.E.2d 907, 909 (1979)). "Where facts are stipulated, they are deemed established as fully as if determined by the verdict of a jury." *Blair v. Fairchilds*, 25 N.C. App. 416, 419, 213 S.E.2d 429, 430-31, *cert. denied*, 287 N.C. 464, 215 S.E.2d 622 (1975). Defendant admits that the parties stipulated to certain documents, but only as to their admissibility. Defendant offered no rebuttal evidence as to plaintiff's damages.

Testimony reveals that the existence of damages was certainly stipulated to, including the fact that plaintiff's trailer was split in half. The direct examination of plaintiff is replete with references by his counsel that these damages were stipulated to, without any objection from defendant.

However, regardless of the determination of whether the invoices were stipulated to as their admissibility only or as to the amounts that they represented, or whether or not the Full Commission is allowed to disregard stipulations by the parties, it is certain that the invoices and estimates were introduced through plaintiff's testimony into evi-

SMITH v. N.C. DEP'T OF TRANSP.

[156 N.C. App. 92 (2003)]

dence. They constitute the only evidence in the record as to damages of plaintiff. While the Full Commission is the fact-finder and makes the determinations as to credibility, these documents were allowed into evidence without objection from defendant. Nothing in the record supports the approximately 50% devaluation of the Deputy Commissioner's award by the Full Commission. There is, therefore, no competent evidence in the record to support the award by the Full Commission, and we vacate as to the damages of the trailer, wrecker costs, site cleanup and storage fees, and remand for further proceedings.

II.

[5] Plaintiff's final contention deals with the award of damages for lost income and additional costs, as they too were cut in half by the Full Commission.

As to lost income, plaintiff testified that he had made "personal notes" regarding his damages. He testified that he had deduced, "based upon [his] earnings for the last few years prior to this accident," that he had an average weekly wage of $5,200.00. Plaintiff confirmed that he was out of work for eight weeks, and that he normally works 36 to 40 weeks out of the year. In those eight weeks, plaintiff opined that he would have worked the entire time, as he travels "back and forth from the east coast to the west coast," and "missed about two full trips plus a little extra due to this accident." By this information, plaintiff derived the amount for his total loss of income to be about $42,000.00.

As to the time spent by plaintiff in procuring equipment necessary for his moving business and additional tractor damages, plaintiff testified that he had estimated that he lost $7,000.00 worth of equipment, spent $2,000.00 in locating a substitute trailer, and $5,000.00 of additional tractor damage repair.

We note that, as in the previous section, defendant never made an argument against these damages, nor introduced evidence that contradicted it. Further, there is no mention in the record as to the Full Commission's finding, in relation to lost income, that "[t]he damages estimated by plaintiff were based on gross income rather than net income and the Full Commission based its damage award on net income."

Defendant contends that plaintiff's own testimony is insufficient to support any finding of damages as to lost income and additional

**SMITH v. N.C. DEP'T OF TRANSP.**

[156 N.C. App. 92 (2003)]

costs, since an award of damages may not rest upon a mere guess or an estimate not based on fact. *See Rankin v. Helms*, 244 N.C. 532, 538, 94 S.E.2d 651, 656 (1956); *Daly v. Weeks*, 10 N.C. App. 116, 118-19, 178 S.E.2d 30, 31-32 (1970). Testimony similar to that rendered by plaintiff has been deemed proper when provided by the owner or employer, noting that defendant was given ample opportunity to cross-examine, but did not. *See Peterson v. Johnson*, 28 N.C. App. 527, 531, 221 S.E.2d 920, 924 (1976); *Smith v. Corsat*, 260 N.C. 92, 131 S.E.2d 894 (1963). In any event, defendant cannot assert the lack of competency of this evidence as grounds to reduce the award as there was no objection to its receipt. *See* N.C. Gen. Stat. § 8C-1, Rule 103(a) (2001).

The concurring opinion states that the Commission may reduce tort damage awards to a net income amount. While this may be correct, insofar as it relates to loss of income or profits, any "net" amount must be supported by evidence of record and cannot reflect an arbitrary number chosen without a basis in the record itself. Further, there is still no evidence that such a reduction would equal 50% of the total award as only income or profits are subject to such calculations. Finally, as to the concurrence's statement that the Commission may ignore "speculative" damages, we have held that plaintiff's testimony is not too speculative to establish damage. *Smith v. Corsat*, 260 N.C. 92, 131 S.E.2d 894 (1963).

As the only evidence on damages was either stipulated to by the parties or unobjected to, and as there is no evidence in the record to support the Commission's reductions to plaintiff's demands, this case is remanded to the Full Commission for an award of damages consistent with the evidence of record.

Affirmed in part, vacated in part and remanded.

Judge BRYANT concurs.

Judge TYSON concurs in the result with separate opinion.

TYSON, Judge, concurring in part, concurring in the result in part.

I concur with parts I, II, and III of the majority's opinion affirming the Full Commission's finding that plaintiff complied with the requirements of the Tort Claims Act, that defendant was negligent, and that plaintiff was not contributorily negligent.

I also concur in the result to vacate the damage award and remand to the Full Commission for further determination. I write separately to state that on remand the Full Commission may ignore speculative evidence and resolve any conflicts and inconsistencies in the record evidence.

> The Commission may "weigh the evidence [presented to the deputy commissioner] and make its own determination as to the weight and credibility of the evidence." The Commission may strike the deputy commissioner's findings of fact even if no exception was taken to the findings.

*Jenkins v. Piedmont Aviation Servs.*, 147 N.C. App. 419, 427, 557 S.E.2d 104, 109 (2001), *disc. review denied*, 356 N.C. 303, 570 S.E.2d 724 (2002) (quoting *Keel v. H & V Inc.*, 107 N.C. App. 536, 542, 421 S.E.2d 362, 367 (1992)).

Plaintiff outlined the damages specifically in the last paragraph of the complaint: semi-tractor damages of $11,537.34, semi-trailer damages of $18,625.00, moving equipment lost or destroyed totaling $7,000.00, site clean-up, tow and wrecker fees totaling $2,294.00, lost wages in the amount of $42,000.00, and incidental expenses of $2,000.00. Although these damages total $83,456.34, plaintiff's prayer for relief is to recover damages of $82,892.63 plus interest and attorneys' fees.

At the hearing before the Deputy Commissioner, plaintiff testified to his damages. Plaintiff stated that damages to the tractor were stipulated to and were found under Tab B. The estimate under Tab B for damages to the tractor is $5,973.63. Plaintiff explained to the Deputy that after the tractor was repaired, he experienced new problems involving the cab's electrical system and leaks. The repairs to the cab totaled another $5,000.00. Damage to the trailer under Tab C, which was not stipulated to but was not contested, determined to be a total loss of $18,625.00. Plaintiff requested this number be reduced by the salvage value of $787.00. Plaintiff also testified that there were wrecker fees but did not explain the amount or where to find those. The invoice for the wrecker fee is contained under Tab D, but the estimate is not readable. As for site clean-up, plaintiff pointed to Tab E but specifically requested $2300.00. Plaintiff requested the storage fees stipulated to under Tab F which was $960.00, and lost income in the amount of $42,000.00. The lost income determination was based upon plaintiff's testimony of yearly income divided by approximate

SMITH v. N.C. DEP'T OF TRANSP.

[156 N.C. App. 92 (2003)]

number of weeks worked a year multiplied by the number of weeks plaintiff was out of work due to the loss of his trailer. Plaintiff asked for damages in the amount of $7,000.00 for lost moving equipment and $2,000.00 for incidental expenses in locating a new trailer and equipment. These damages total $83,071.63, an amount higher than he demanded in the complaint.

The Deputy Commissioner awarded plaintiff $84,053.63, more than plaintiff asked for in his complaint or testified to at the hearing. The Deputy's recommended decision quantified the following: $10,973.63 for damage to the tractor, $18,625.00 for damage to the trailer, $9,000.00 for equipment lost and expenses incurred in finding a new trailer and equipment, and $3,455.00 for wrecker, site clean-up, and storage fees. The Deputy failed to subtract the $787.00 from the trailer damage for salvage, and found the expenses for wrecker, site clean-up, and storage to be greater than the amounts alleged in the complaint and testified to by plaintiff.

In the area of state tort claims, wide discretion is given to the Commission in its determination of damages. *See Brown v. Board of Education*, 269 N.C. 667, 671, 153 S.E.2d 335, 339 (1967). This broad discretion allows the Commission to weigh the evidence and award appropriate damages. The findings of fact which support the award should be based upon competent evidence in the record. *Bullman v. Highway Comm.*, 18 N.C. App. 94, 98, 195 S.E.2d 803, 806 (1973).

The Commission's finding of fact that plaintiff had stated and the Deputy had found gross and not net income loss is supported by an inference that statements of yearly income or salary are generally expressed as gross amounts. The Commission may properly determine whether plaintiff's lost income estimates were expressed as gross or net income in making its award. On remand, the Commission is free to ignore any speculative damages, resolve the inconsistencies, accept or reject the record evidence, and issue an award consistent with the competent evidence in the record.